Herbert NANTY, Plaintiff-Appellant,

v.

The BARROWS COMPANY, formerly Barrows Furniture Company, Defendant-Appellee.

No. 80–5106.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 12, 1981.

Decided Nov. 9, 1981.

Rehearing and Rehearing En Banc Denied Dec. 28, 1981.

Alice L. Bendheim, Bendheim, Mote & Monson, Phoenix, Ariz., for plaintiff-appellant.

* Honorable Byron G. Skelton, Senior Judge, United States Court of Claims, sitting by designation.

Stephen W. Pogson, Evans, Kitchel & Jenckes, Phoenix, Ariz., for defendant-appellee.

Before SKELTON,* Senior Judge, U. S. Court of Claims, CHOY and REINHARDT, Circuit Judges.

REINHARDT, Circuit Judge.

Herbert Nanty is a Native American, a full blooded Apache. He was denied a job as a furniture delivery truck driver by The Barrows Company. Nanty filed suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, alleging that Barrows discriminated against him in its hiring decision on the basis of race. Following a short trial, the district court, 483 F.Supp. 101, entered judgment for Barrows.

*BACKGROUND*

The events leading up to this lawsuit are not seriously disputed. On September 23, 1975, Barrows placed an order with the Arizona Department of Economic Security Job Bank Service (the "Job Bank") for a furniture delivery truck driver. The Job Bank is a statewide service which matches prospective employers with prospective employees. An employer placing an order with the Job Bank is required to list the qualifications for the job it wishes to fill. When Barrows placed its order for a furniture delivery truck driver, it listed three qualifications: experience in handling and unloading furniture, a Class A chauffeur's license, and a good driving record.

On September 25, two days after Barrows placed its order, Nanty contacted the Job Bank, seeking employment as a truck driver. Nanty appeared, at least to those at the Job Bank, to satisfy the three listed qualifications, and they referred him to Barrows. Nanty went to the Barrows warehouse that same day to apply for the job. When he arrived, and presented his job referral slip,

he was told that the job had been filled.[1] He was not asked any questions about his qualifications, was not interviewed and was not given an application. Three days later, on September 28, Barrows hired two furniture delivery truck drivers, both of whom were Caucasian. Barrows did not withdraw its order with the Job Bank for a furniture delivery truck driver until October 1, 1973.

After having been given permission by the Equal Employment Opportunity Commission to bring suit against Barrows for employment discrimination,[2] Nanty filed suit in district court.

## UNLAWFUL DISCRIMINATION

Nanty claims that he received disparate treatment from Barrows in its adverse hiring decision. The general standards that govern the analysis of claims of disparate treatment under Title VII were laid down in *McDonnell Douglas v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973).

■ In *McDonnell Douglas*, the Supreme Court established the analytic process to be used for evaluating evidence of discrimination in Title VII cases. *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978). The "order and allocation of proof" for determining whether there has been discrimination are as follows: (1) the plaintiff must present evidence sufficient to make out a *prima facie* case of discrimination; (2) the defendant must then "articulate" a legitimate, nondiscriminatory reason for its decision not to employ the plaintiff; and (3) the plaintiff must then be given the chance to prove that the "assigned reason" was "a pretext or discriminatory in its application." *McDonnell Douglas*, 411 U.S. at 807, 93

S.Ct. at 1826.[3] Thus, if the plaintiff fails to establish his *prima facie* case, the defendant is entitled to judgment. On the other hand, if the plaintiff establishes his *prima facie* case, and the defendant fails to "articulate" a legitimate, nondiscriminatory reason for its adverse employment decision, the third step is inapplicable, and the plaintiff has established unlawful discrimination. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 1094–95, 67 L.Ed.2d 207 (1981). Finally, if the plaintiff makes out his *prima facie* case, and the defendant "articulate[s]" a reason for its adverse employment decision, the resolution of the issue of whether there has been unlawful discrimination depends on whether the plaintiff carries his burden at step three.

■ The Court in *McDonnell Douglas* also explained the substantive standards applicable at each of the three steps in the analytic process. The Court there set forth the four elements necessary for individual complainants to establish a *prima facie* case of race discrimination under Title VII; the plaintiff must show:

1. that he belongs to a racial minority;

2. that he applied and was qualified for a job for which the employer was seeking applicants;

3. that, despite his qualifications, he was rejected; and

4. that, after his rejection, the position remained open and the employer continued to seek applications from persons of complainant's qualifications.

411 U.S. at 802, 93 S.Ct. at 1824 (footnote omitted).

---

1. Nanty had twice before gone to Barrows to apply for a job. On both occasions he was told, by the same person who rejected him on September 25, 1973, that no jobs were available. On neither of his prior visits to Barrows, however, had he been referred by the Job Bank.

2. Nanty was referred to the Equal Employment Opportunity Commission by the Job Bank after he told the Job Bank about his rejection by Barrows. Subsequently, the EEOC issued a "right to sue" letter.

3. These procedures, and the burdens imposed, have repeatedly been reaffirmed by the Supreme Court. *See, e. g., Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Board of Trustees of Keene St. Col. v. Sweeney*, 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978); *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978).

■ The Supreme Court has made it clear, however, that the *McDonnell Douglas* test is not the exclusive method by which a plaintiff may establish his *prima facie* case. *Teamsters v. United States*, 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed. 396 (1977). The plaintiff may meet his initial burden simply by "offering evidence adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under the Act," *id.*, *i. e.*, evidence that indicates that "it is more likely than not" that the employer's actions were based on unlawful considerations. *Furnco Construction Corp.*, 438 U.S. at 576, 98 S.Ct. at 2949. The Court recently explained the plaintiff's initial burden:

The burden of establishing a prima facie case of disparate treatment is not onerous. The plaintiff must prove by a preponderance of the evidence that she applied for an available position, for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination. The prima facie case serves an important function in the litigation: it eliminates the most common nondiscriminatory reasons for the plaintiff's rejection. See *Teamsters v. United States*, 431 U.S. 324, 358 & n. 44, 97 S.Ct. 1843, 1866, n. 44, 52 L.Ed.2d 396 (1977). As the Court explained in *Furnco Construction Co. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978), the prima facie case "raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee. If the trier of fact believes the plaintiff's evidence, and if the employer is silent in the face of the presumption, the court must enter judgment for the plaintiff because no issue of fact remains in the case.

*Burdine*, 450 U.S. at 253, 101 S.Ct. at 1094 (footnotes omitted).

We believe that Nanty would meet the traditional four point test for the *prima facie* case laid in *McDonnell Douglas*. However, the facts and circumstances presented by this case are more readily analyzed under the more flexible approach set forth in *Burdine*. Thus, at the *prima facie* step of our analysis we consider whether Nanty was "rejected under circumstances which give rise to an inference of discrimination."

■ Nanty was a legitimate candidate for the job of furniture delivery truck driver. He met the three qualifications listed with the Job Bank. His experience handling heavy furniture, his valid class A chauffeur's license, and his good driving record [4] established that he met the qualifi-

---

4. Nanty proved that he had sufficient experience handling and unloading furniture. He had ten years experience moving pianos and other heavy furniture. There is no dispute that Nanty had a valid chauffeur's license. However, at trial Barrows contended that Nanty did not have a good driving record. Barrows noted that Nanty had one accident in 1973. During oral argument, Barrows conceded that a good driving record is not a perfect, or an accident free, record. Barrows admitted that it did not even check to see if its applicants had had accidents, and that Barrows had hired drivers with accident records in the past. Barrows asserted that in order to determine if an applicant had a good driving record it only checked the number of citations he had received. At the time Nanty sought employment with Barrows, he had never received a citation. Thus, not only did Nanty have a good driving record, measured by the standard ordinarily used by Barrows, but he would easily have passed the check which Barrows makes to determine whether its good driving requirement is met.

The district court made only a conclusory finding that Nanty was not qualified. It did not mention Nanty's one accident, or his driving record, in its memorandum and opinion. Although we think it unlikely that the district court based its finding of lack of qualification on Nanty's driving record, compare discussion in note 5 *ante*, we cannot determine the basis for the finding. We can say, however, that if the finding was based on Nanty's driving record, it was clearly erroneous.

Conclusory findings as to lack of qualification make our task on appeal extremely difficult. It is important to the effective review of Title VII cases that district courts make specific factual findings and explain the reasons for their decisions. Such findings and explanations serve the interests of the litigants as well as the courts.

cations and that he was capable of performing the job. The Job Bank clearly reached the same conclusion when it referred Nanty to Barrows. Nevertheless, at a time when Barrows was actively seeking furniture delivery truck drivers, Nanty was rejected summarily, without an interview or even an opportunity to file an application. Instead, he was told that there was no job to be filled. After Nanty's rejection, the position of furniture delivery truck driver remained open and Barrows subsequently hired two Caucasians for the job. These circumstances give rise to an inference of unlawful discrimination and established Nanty's *prima facie* case. The district court's finding to the contrary was clearly erroneous.

Our conclusion that Nanty proved a *prima facie* case is supported by *Teamsters v. United States*, 431 U.S. at 358 n.44, 97 S.Ct. at 1866 n.44. There, the Court said that a *prima facie* case is established by elimination of the "two most common legitimate reasons on which an employer might rely to reject a job applicant: an absolute or relative lack of qualifications or the absence of a vacancy in the job sought." *Id.; see also Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094. Here, although Nanty was a legitimate candidate for a position the employer was seeking to fill, Barrows rejected him at a time when it had no knowledge of, and no way of evaluating, his qualifications. Therefore, neither "an absolute or relative lack of qualification" nor "the absence of a vacancy in the job sought" was the *reason* for Nanty's rejection, and Nanty established his *prima facie* case.

■ We now turn to step two of the *McDonnell Douglas* analytic process, and consider the question whether Barrows "articulate[d] a legitimate nondiscriminatory"

reason for Nanty's rejection. At step two of the *McDonnell Douglas* analysis, the defendant must show, "through the introduction of admissible evidence, *the reasons for the plaintiff's rejection.*" *Burdine*, 450 U.S. at 255, 101 S.Ct. at 1094 (emphasis added) (footnote omitted). Barrows makes several arguments explaining why Nanty would not have been hired as a furniture delivery truck driver. However, these arguments are simply not relevant here, since none explains *the reason for Nanty's rejection.* Barrows knew nothing about Nanty at the time of the rejection and offers *no* explanation for its action in rejecting Nanty. Thus Barrows has totally failed to "articulate a legitimate nondiscriminatory" *reason for Nanty's rejection* and to meet its step two burden.

As we explained earlier, Nanty proved a *prima facie* case of unlawful discrimination. He offered "evidence adequate to create an inference that [his rejection] was based on a discriminatory criterion illegal under the Act," *Teamsters v. United States*, 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977) (footnote omitted), and, in so doing, established that, in the absence of any other explanation, it is "more likely than not" that Barrows' adverse employment decision was the product of unlawful discrimination. *Furnco Construction Corp.*, 438 U.S. at 576, 98 S.Ct. at 2949. Since Barrows offered *no* explanation for its decision to reject Nanty, it remained "silent in the face of the presumption" created by Nanty's *prima facie* case. *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094. Thus, Nanty's *prima facie* showing is sufficient to meet his ultimate burden of proving unlawful discrimination under *McDonnell Douglas. Id.*[5]

5. Barrows contends that there were three additional qualifications which it failed to list with the Job Bank—that the applicant be neat, articulate and personable. All three of these "additional qualifications" are highly subjective in nature. For reasons we explain *post*, we would view with considerable skepticism any rejection of an otherwise qualified candidate for the job of furniture delivery truck driver on any of these grounds. We note that the record contains no evidence which would permit us to

conclude that Nanty failed to meet these additional requirements; nor are the district court's findings of any assistance in this respect. More important, however, Barrows does not claim that lack of these personal attributes was the cause for Nanty's rejection. Under these circumstances, the personal attributes issue does not affect our conclusion that Nanty proved his claim of unlawful discrimination. Similarly, Barrows' contention that the two individuals who were subsequently hired were

## BEYOND McDONNELL DOUGLAS

Nanty requests, *inter alia*, an injunction prohibiting future, or continued, discrimination by Barrows against him, an injunction ordering Barrows to hire him as a furniture delivery truck driver, and monetary relief for lost wages and benefits.

When a legitimate candidate for a job has demonstrated that he has been the subject of unlawful discrimination in the employment process, he is entitled to an injunction against future, or continued, discrimination.[6] The purpose of such an order is to ensure that, at the very least, the applicant will receive full and fair consideration from the employer if he seeks similar employment in the future. In view of our holding that Nanty proved his claim of unlawful discrimination, he is entitled to an injunction against future, or continued, discrimination.

Frequently, the finding of unlawful discrimination necessarily determines the plaintiff's right to the job and monetary relief. However, that is not the case here. When a legitimate candidate for employment is summarily rejected because of unlawful discrimination, we still must determine whether, absent that discrimination, he would have been hired. Before considering whether Nanty is entitled to an order directing Barrows to hire him, we set forth the burden of proof that is applicable to the determination of this issue. The *McDonnell Douglas* rule that the ultimate burden of proof remains on the plaintiff is not applicable after unlawful discrimination has been proven. *League, etc. v. City of Salinas Fire Dept.*, 654 F.2d 557, 559 (9th Cir. 1981). At the relief stage, we apply the opposite rule and impose a heavy burden on the defendant. *Id.* Where a job applicant has proved unlawful discrimination in the employment process, he must be awarded full relief, *i. e.*, the position retroactively, unless the "defendant shows 'by "clear and convincing evidence" that even in the absence of discrimination the rejected applicant would not have been selected for the open position.' *Marotta v. Usury*, 629 F.2d 615, 618 (9th Cir. 1980) [citing *Day v. Mathews*, 530 F.2d 1083 (D.C.Cir.1976)]." *Id.* at 558. This court, in *League*, explained the reason for this rule:

> The burden of showing that proven discrimination did not cause a plaintiff's rejection is properly placed on the defendant-employer because its unlawful acts have made it difficult to determine what would have transpired if all parties had acted properly. *See Day*, 530 F.2d at 1086.

*Id.* at 559.[7]

Barrows contends that Nanty was not as qualified as the Caucasians who were hired, and that as a result Nanty would not have been hired even in the absence of discrimination. The district court did not consider this contention. It simply made a finding, which we have held to be erroneous, that Nanty was not qualified for the job. For reasons we have explained earlier, Barrows' contention regarding the superior qualifications of those actually hired is not relevant to our determination of unlawful discrimination in the employment process. It is relevant, however, to the question whether Nanty would have been hired, absent such discrimination, and thus to the question of Nanty's right to the job. Since the district

---

better qualified than Nanty does not affect our conclusion. It is obvious from what we have said earlier that the allegedly superior qualifications of the two individuals subsequently hired was not the reason that Barrows unlawfully refused to interview Nanty or permit him to file an application. Nor, in fact, does Barrows make any such claim.

**6.** *See*, 42 U.S.C. § 2000e–5(g); *cf. James v. Stockham Valves & Fittings Co.*, 559 F.2d 310, 356 (5th Cir.), *cert. denied* 434 U.S. 1034, 98 S.Ct. 767, 54 L.Ed.2d 781 (1977); *E.E.O.C. v.*

*New York Times Broadcasting Service, Inc.*, 542 F.2d 356, 361 (6th Cir. 1976).

**7.** The burden we have placed on the defendant at the relief stage of the case is consistent with the Supreme Court's observation in *East Texas Motor Freight System, Inc. v. Rodriquez*, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977), that when unlawful discrimination has been established, the defendant is entitled to prove that the plaintiff would not have been hired. *Id.* at 404 n.9, 97 S.Ct. at 1897 n.9.

court has not previously considered the issue of what relief is required or the effect of Barrows' claim regarding the superior qualifications of others, we remand for a further hearing, limited to the question of the proper relief. At the hearing, the district court should afford Barrows the opportunity to prove by "clear and convincing" evidence that Nanty was less qualified than those who were hired and that, in the absence of discrimination, he would not have been hired.[8]

■ On remand, the district court will also be faced with Barrows' contention that Nanty would not have been hired because he did not possess the three personal attributes which Barrows contends are a prerequisite for employment as a furniture delivery truck driver, i. e., that an applicant be neat, articulate and personable. We therefore offer some guidance to the district court on this matter. Subjective job criteria present potential for serious abuse and should be viewed with much skepticism. Use of subjective job criteria not only has, in many instances, a disparate impact on minorities,[9] but also provides a convenient pretext for discriminatory practices. Subjective criteria may easily be asserted as the reason for an adverse employment decision when, in fact, the reason was discriminatory. Moreover, where the job in question involves skills which are primarily physical

or mechanical, or are tangible or objective in nature, as does the job of furniture delivery truck driver, it is more likely that subjective criteria can be used as an excuse for discrimination. In a case involving higher echelon employment, the skills for which are necessarily measured in more subjective terms, the same potential for abuse exists, but the use of subjective criteria is less inherently suspect.

■ Upon remand, exacting scrutiny of Barrows' claim is required. The district court should carefully examine the relevance of any subjective criteria used by Barrows to the job performance of a furniture delivery truck driver, the extent to which Barrows has made use of such criteria for *legitimate* reasons in the past, and whether the criteria are being used as a cover for discrimination in this instance.[10]

## DISPOSITION

The case is reversed and remanded with instructions to enter an injunction prohibiting Barrows from future, or continued, discrimination against Nanty and for further proceedings consistent with this opinion.

---

**8.** We note that the answer to this question depends in part on Barrows' hiring practices at the time of Nanty's rejection. If Barrows filled job vacancies with the first qualified applicant, then the fact that the two Caucasians who applied later were better qualified is plainly irrelevant to the issue whether Nanty would have been hired, absent discrimination. As we have noted, the burden, with respect to all aspects of the relief issue, is on Barrows.

**9.** See Note, *Title VII and Employment Discrimination in "Upper Level" Jobs*, 73 Colum.L.Rev. 1614, 1630 (1973). We do not suggest that the principles developed in disparate impact cases are necessarily applicable in the context of a disparate treatment case. However, the dangers in the use of subjective job criteria that have been identified in disparate impact cases are also present in disparate treatment cases. As we explain in the text following this note, the district court, on remand, must be sensitive to these dangers in its consideration of whether

Barrows has met its burden in the relief stage of the case.

**10.** Nanty also requests, and is entitled to, reasonable attorney's fees. Section 706(k) of Title VII, 42 U.S.C. § 2000e–5(k), provides that "the court . . . may allow the *prevailing party* . . . a reasonable attorney's fee as part of costs . . ." (emphasis added). A plaintiff is a "prevailing party" if he (1) prevails on a significant issue in the litigation which (2) achieves a benefit sought in the lawsuit. *Manhart v. City of Los Angeles*, 652 F.2d 904, 907 (9th Cir. 1981). By proving unlawful discrimination, Nanty prevailed on a significant issue. *Id.* "By securing an injunction" against future, or continued, discrimination, Nanty achieved a benefit sought in his lawsuit. *Id.* He need not be awarded money damages to achieve a benefit sought in his lawsuit. Accordingly, Nanty is a "prevailing party," and is entitled to attorney's fees. On remand, the district court is to determine what constitutes a reasonable fee.