**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**SPOKANE CONCRETE PRODUCTS, INC., Defendant.**

No. C–79–253.

United States District Court,
E. D. Washington.

March 12, 1982.

Sheilia McKinnon, Supervisory Trial Atty., E.E.O.C., Seattle, Wash., for plaintiff.

Lawrence R. Small, Paine, Lowe, Coffin, Hamblen & Brooke, Spokane, Wash., for defendant.

MEMORANDUM OPINION

QUACKENBUSH, District Judge.

This is a sex discrimination case brought by the Equal Employment Opportunity

Commission (hereinafter the "EEOC") pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* The EEOC action was brought on behalf of Beatrice Sellers-McKenna, a female applicant for a position as truck driver with Spokane Concrete Products, Inc., defendant, (hereinafter referred to as "Spokane Concrete"). Plaintiff contends that the defendant intentionally engaged in unlawful employment practices in violation of Title VII by failing to consider and hire Beatrice Sellers-McKenna. A bench trial was held on October 27 and 28, 1981, with both sides presenting witnesses and exhibits. The post-bench-trial supplemental briefing schedule was completed on January 13, 1982.

Spokane Concrete is a Washington corporation, doing business in the State of Washington, engaged in the manufacture, sale and distribution of concrete pipe and related concrete products. At all times pertinent to this action, Spokane Concrete has employed more than fifteen (15) employees. The acts alleged in plaintiff's complaint were committed within the state and the Eastern District of Washington. All conditions precedent to the filing of this action have been fulfilled. On May 12, 1977, Beatrice Sellers (Beatrice Sellers-McKenna since July, 1981), filed a charge with the Commission against Spokane Concrete alleging that Spokane Concrete had discriminated against her in employment because of her sex.

On May 9, 1977, a vacancy for a truck driver position existed at Spokane Concrete. Spokane Concrete called the Spokane office of the Washington State Employment Security Department on or about May 9, 1977, requesting applicants for the position of truck driver. The job order which the Department issued in response to Spokane Concrete's request for applicants stated:

> "Need person who is qualified to drive combination diesel rigs, semi- and tractor-trailer rigs. Will haul concrete pipe products in and out of town. Will return home every night. Will have to load and unload own rig. Must have or be able to obtain combination license. 8-5 M-F ..."

Beatrice Sellers-McKenna was sent to Spokane Concrete by Margaret Burns Pirie, her WIN counselor at the Washington State Employment Security Department, as an applicant for the truck driver position. Ms. Sellers-McKenna filled out an application for the truck driver position at Spokane Concrete on May 9, 1977. At that time, she had a combination license, she had worked as a truck driver for a salvage business since 1974 whenever the company needed a truck driver, and held a full-time position as a truck driver between 1975 and 1977 for a carrier company where she was responsible for loading and unloading heavy items from the truck. Before she applied at Spokane Concrete, Ms. Sellers-McKenna also attended a mechanical training and manuvering course in 1975, had received a truck driving training certificate in 1977 and was finishing a course in traffic management. Defendant's application form did not ask about the applicant's strength or physical abilities.

After filling out the application form, Ms. Sellers-McKenna was interviewed for approximately five to ten minutes on May 9, 1977, by Leland R. Hubenthal. Ms. Sellers-McKenna testified that approximately one minute of the interview was spent in actual verbal exchange. She further testified that she was not asked about previous experience, whether she had any health problems, or how much weight she could lift. She recalled her interviewer saying to her, "Do you realize pipe weighs up to three hundred pounds? Do you get my message?" Ms. Sellers-McKenna further testified that she knew she could do the job. She stated she was heavier in 1977 than she is now, and in good shape from heavy lifting. Ms. Sellers-McKenna's WIN counselor testified that she would not have sent the applicant to the defendant's office had she not believed her to be qualified, although, Ms. Pirie did state that she was not aware of the actual number of pounds involved in the loading and unloading. At the interview, Ms. Sellers-McKenna was also asked whether she had transportation and child care. She was not given a test of any kind by defendant.

Ms. Sellers-McKenna was not hired by Spokane Concrete for the position of truck driver. After she applied, Bruce E. Coleman was hired on or about May 10, 1977, to fill the position. Defendant testified that the normal employment practice was to give a driving test only to the applicant selected initially by the company to fill the position. Mr. Coleman was the only applicant given a driving test. The reasons given by Spokane Concrete for selecting Mr. Coleman were that he was a WIN candidate and had prior business experience and appeared to be strong. The defense testimony was that it was unaware that Ms. Sellers-McKenna also was a WIN candidate. Spokane Concrete has never had a woman truck driver. However, there was no testimony that no woman could do the job.

Mr. Coleman was paid $5.47 per hour commencing May 9, 1977 with an increase to $5.97 per hour from May 23, 1977 until April 1, 1978. From the latter date through December 26, 1978, the date of Mr. Coleman's termination, he was paid $6.35 per hour. From April 1, 1979 through March 31, 1980, the wage of a truck driver at Spokane Concrete was $6.73 per hour. From April 1, 1980 through March 31, 1981 that position paid $7.55 per hour. From April 1, 1981 to the date of trial the position of truck driver at Spokane Concrete paid $8.40 per hour. Between May 1977 and December 1978, Bruce Coleman earned $25,-479.00.

Between May 9, 1977 and October 1977, Beatrice Sellers was unemployed. Between October, 1977 and May 1979, Beatrice Sellers-McKenna was employed at National Electric Coil at the rate of $4.17 per hour. In May, 1979, Beatrice Sellers-McKenna was laid off at National Electric Coil and was unemployed until October, 1979. Between October, 1979 and August, 1980, Beatrice Sellers-McKenna was employed at R. A. Hanson at the rate of $1,025.00 per month. In August, 1980, Ms. Sellers-McKenna was laid off and was unemployed until April, 1981.

Between April, 1981 and July, 1981, Ms. Sellers-McKenna was employed at Foley, Wismer and Becker at the rate of $17.65 per hour. In July, 1981, Ms. Sellers-McKenna moved to Canada and was unemployed until September, 1981. From September, 1981 to the present, Beatrice Sellers-McKenna has been employed at Calgary Auxiliary Hospitals, Calgary, Canada at the rate of $22,500.00 per year.

## DISCUSSION

*Liability*

The burdens of proof in "disparate treatment" discrimination cases such as this one were set forth by the Supreme Court in *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), as further defined in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for rejecting the applicant. If the defendant meets that burden, the plaintiff must show the reasons offered by defendant were a pretext for discrimination. *Burdine, supra*, 101 S.Ct., at 1097.

Specifically, the *McDonnell Douglas* elements for a *prima facie* case of disparate treatment are that the plaintiff must show:

(1) She belongs to a class protected by Title VII;

(2) She applied and was qualified for the job for which the employer was seeking applicants;

(3) Despite her qualifications she was rejected; and

(4) After the rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

*McDonnell Douglas, supra*, 411 U.S. at 802, 93 S.Ct. at 1824. The Ninth Circuit has rejected the argument that meeting the specific *McDonnell Douglas* requirements is the "only means" by which a charging party may make a proper *prima facie* showing. *Lynn v. Regents of the University of California*, 656 F.2d 1337, 1341 (9th Cir. 1981), citing *Teamsters v. United States*, 431 U.S.

324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977). Teamsters instructs that the plaintiff simply "must carry the initial burden of offering evidence adequate to create an inference that an employment decision was based upon discriminatory criteria illegal under the Act." *Id.* The Supreme Court later determined that the initial burden is met where the plaintiff has shown "it is more likely than not" that the employer's actions were based upon unlawful considerations. *Lynn, supra,* citing *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 576, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978).

As stated recently by a Ninth Circuit panel regarding application for a truck driving position, a plaintiff may now "prove by a preponderance of evidence that she applied for an available position, for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination." *Nanty v. Barrows Co.,* 660 F.2d 1327, 1331 (9th Cir. 1981) quoting *Burdine, supra,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207.

While this court believes that EEOC's evidence meets the four point test laid out in *McDonnell Douglas,* the facts presented are more readily analyzed under "the more flexible approach set forth in *Burdine". Id.* Hence, at the *prima facie* analytical step, it must be determined whether *Sellers-McKenna* was "rejected under circumstances" giving rise to an inference of discrimination. *Id.*

As discussed earlier, the parties agree that defendant had an opening for a truck driver and sought applicants who were qualified to drive a combination diesel rig and who had a combination license. Ms. Sellers-McKenna applied for the job and at the time of her application, was a trained truck driver with three years' experience in driving trucks including combination rigs. She testified at trial that as a driver, she had been required to load and unload cargo including grain, lumber, transformers, and steel building components. While applicants generally were asked about their driving records, health and prior experience, this applicant was only questioned about

whether she had transportation and child care. She also had a combination license. The President of Spokane Concrete testified that following Ms. Sellers-McKenna's application, Mr. Coleman, a male, was selected for the position. Sellers-McKenna's application was not discussed when she left the brief interview. Consequently, this court concludes that defendant sought applicants, that Beatrice Sellers was qualified for and applied for the position, and that she was rejected under circumstances giving rise to an inference of unlawful discrimination.

Turning to step two of the *McDonnell Douglas* analysis, the burden shifted to defendant to "articulate some legitimate, nondiscriminatory reason" for rejecting this applicant. *Burdine, supra.*

Defendant argues it has met its burden because the applicant selected was assertedly better qualified than Ms. Sellers-McKenna, and second, because of defendant's belief that it has established the defense of "business necessity" as discussed in *Blake v. City of Los Angeles,* 595 F.2d 1367 (9th Cir. 1979). Specifically, defendant asserts that Sellers-McKenna was treated the same as all other applicants, and that Coleman was selected because he was better qualified. While Spokane Concrete has "articulated" reasons for rejection, based upon plaintiff's evidence, the court concludes, under step three of *McDonnell Douglas,* these reasons to be a pretext for discrimination on the basis of sex.

This court concludes that Ms. Sellers-McKenna was not given the benefit of a serious interview. The court accepts the testimony that the interview lasted approximately five to ten minutes, with only one minute of actual verbal exchange. The interviewer, Mr. Hubenthal, testified that he would normally ask applicants about their experience, driving record, and health. He frankly admitted he did not discuss any of these factors with this applicant. Instead, she was asked whether she had transportation and child care. Further, this inquiry was whether she was aware that she would have to load and unload pipes weighing up to 300 lbs. The applicant was asked if she

got the "message". It is this court's conclusion that the latter question as well as the interview in general was not designed to explore her ability to do the job. Rather, the interview was perfunctory and designed to discourage this applicant. Mr. Hubenthal testified that he made a judgment that one reason she was not qualified was because she was a woman.

Mr. Schultz, the President of Spokane Concrete, testified that the only discussion about her at the time of selection that is, after the interviewing, was how unusual it was to have a woman apply. Mr. Schultz further testified that he did not determine whether she possessed the minimal qualifications. When questioned by plaintiff's counsel as to whether Ms. Sellers-McKenna was automatically disqualified because she was a woman, he replied that this was not so. However, in his deposition at p. 68, line 2, his inconsistent reply to the same question was that she was automatically disqualified because she was a woman. He testified that Ms. Sellers-McKenna was not asked whether she was a WIN candidate. Yet, one of the asserted reasons for hiring Mr. Coleman was that he was a WIN candidate. Another asserted reason for hiring Mr. Coleman, according to Mr. Schultz, was his prior business experience. Yet, Mr. Hubenthal testified that Ms. Sellers-McKenna was not asked about her prior business experience.

■ Finally, Mr. Schultz testified that Mr. Coleman was selected because he "appeared to be" strong. It is admitted that applicants were not given a test to determine their strength, nor were they given an opportunity to try to perform the job. Indeed, it is admitted that applicants were not even asked about strength. Defendant depended upon the so-called "eyeball" test; that is, defendant's agents looked at the person and determined whether that person appeared to be strong. It is true that an employer may lawfully test applicants to

see if they meet certain criteria, such as strength, which disproportionately excludes women, but which are nevertheless sufficiently job related. See, e.g., Contreras v. City of Los Angeles, 656 F.2d 1267 (9th Cir. 1981); Blake v. City of Los Angeles, 595 F.2d 1367 (9th Cir. 1979) (discussing "business necessity" defense for practices which disproportionately impact certain classes). For the "business necessity" defense to be shown so as to overcome the presumption of unlawful discrimination, an employer must establish, by some "professionally acceptable method", that the required criteria are an important part of the job and then the employer must fairly test all applicants to see if they possess the required abilities. Blake v. City of Los Angeles, 595 F.2d at 1378.

■ At the outset, it is questionable whether such a defense is available to this defendant, since this case is more correctly characterized as a disparate "treatment" action, rather than a disparate "impact" claim.[1] Nanty v. Barron Co., supra, 660 F.2d at 1334, n.9. However, assuming arguendo, that the defense is applicable, this court concludes defendant has not established the "eyeball" test to be a "professionally acceptable method". Nor is this court convinced that "looking at all applicants", fairly tests applicants for positions of the assertedly required strength characteristic.

■ It is necessary to analyze whether sex is a bona fide occupational qualification (BFOQ) for this particular truck driving position. The BFOQ exception is an extremely narrow one. Dothard v. Rawlinson, 433 U.S. 321, 334, 97 S.Ct. 2720, 2729, 53 L.Ed.2d 786 (1977); Rosenfeld v. Southern Pacific Company, 444 F.2d 1219 (9th Cir. 1971); 29 C.F.R. § 1604.2(a). To qualify for the BFOQ exception, the employer must show that sex is itself a qualification that is crucial to the successful performance

---

1. In "disparate treatment" cases, an employer treats people less favorably than others because of their sex. "Disparate impact" cases relate to employment practices that are "facially neutral", but in fact "fall more harshly" on one sex than another and cannot be justified by business necessity. Teamsters v. United States, 431 U.S. 324, 334 n.15, 97 S.Ct. 1843, 1854 n.15, 52 L.Ed.2d 396 (1977).

of the job. *EEOC v. County of Santa Barbara*, 666 F.2d 373 (9th Cir. 1982).

■ Spokane Concrete has presented no evidence that sex is a necessary qualification to perform the truck driver job. While the loading and unloading aspects of the position were portrayed as very strenuous, there was no testimony to the effect that women could not perform the job. Mr. Wahl testified that some women could do the job. Opining that the "average" woman could not do the job, Mr. Schultz nevertheless admitted some could. Indeed, Mr. Schultz testified that while some drivers picked up three hundred pounds, this was not required. Rather, the only requirement was to "maneuver" the pipe. As stated earlier, Ms. Sellers-McKenna was used to heavy lifting and had a course in "maneuvering".

■ Defendant contends that the law permits an employer to make some "assumptions" about the physical differences between men and women. However, it was for just this reason that Title VII was enacted. Congress determined "to eliminate subjective assumptions and traditional stereotyped conceptions regarding the physical ability of women to do particular work." *Rosenfeld v. Southern Pacific Co.*, 444 F.2d 1219 (9th Cir. 1971). As the Supreme Court has stated, "[M]yths and purely habitual assumptions about a woman's ability to perform certain kinds of work are no longer acceptable reasons for refusing to employ qualified individuals .... A stereotyped answer to [questions about accepted and statistical differences between men and women] may not be the same as the answer that the language and purpose of the statute command." *Los Angeles Dept. of Water v. Manhart*, 435 U.S. 702, 707–08, 98 S.Ct. 1370, 1374–75, 55 L.Ed.2d 657 (1978).

In summary, this court concludes defendant's conduct was in violation of Title VII.

## REMEDY

In *Nanty v. Barrows Co.*, 660 F.2d 1327 (9th Cir. 1981) plaintiff asserted he received disparate treatment when he applied for the position of truck driver with a furniture store. *Nanty* governs the scope of the remedy to be accorded the present plaintiff. Moreover, *Nanty* dictates precisely the applicable burden of proof to be applied at the remedy stage.

In view of the present holding that EEOC proved its claim of unlawful discrimination, under *Nanty*, plaintiff is entitled to an injunction against future or continued discrimination. *Id.* at 1333.

Frequently, it has been held that the finding of unlawful discrimination necessarily determines the plaintiff's right to monetary relief. However, *Nanty* instructs that when a "legitimate candidate for employment" is rejected unlawfully, it still must be determined whether, absent that discrimination, plaintiff would have been hired. *Id.* The *McDonnell Douglas* rule that the ultimate burden of proof remains on the plaintiff is not applicable after unlawful discrimination has been proven. Instead, at the relief state, the court must impose a heavy burden on the defendant. *Id.* Plaintiff must be awarded "full relief" unless defendant shows by "clear and convincing evidence" that plaintiff would not have been selected. *Id.* This is deemed proper because employers' unlawful acts are responsible for the difficult determination of what would have transpired had the party acted appropriately, *Nanty v. Barrows, supra*, at 1333 citing *League, et al. v. City of Salinas Fire Dept.*, 654 F.2d 557, 559 (9th Cir. 1981).

The *Nanty* panel opined that the determination of appropriate relief requires "exacting scrutiny". *Nanty v. Barrows, supra*, 660 F.2d at 1334. Accordingly, that court gave some guidance to assist district courts with this analysis. Since subjective job criteria may present potential for "serious abuse", such evidence is to be viewed "with much skepticism." *Id.* Additionally, *Nanty* instructs, subjective criteria not only may result in disparate impact upon those groups protected by Title VII, but also allows a "convenient pretext" for discriminatory employment decisions and practices.

The *Nanty* court carefully instructed that "principles developed in disparate impact cases" are not necessarily applicable in disparate treatment cases, *Id.* at n.9, but that district courts "must be sensitive to these dangers" in considering whether defendant has met its burden in the relief state of a case. *Id.* In addition, it was specifically held that with the job of truck driver, subjective criteria could "be used as an excuse for discrimination". *Nanty v. Barrows Co.*, 660 F.2d at 1334.

With these principles in mind, the court concludes defendant has not met its burden. At the outset, there is no showing that any of the eleven other candidates, save Mr. Coleman, would have been legitimately hired instead of Ms. Sellers-McKenna. The question therefore becomes whether defendant has proved by clear and convincing evidence, it would have hired Mr. Coleman, absent unlawful considerations.

Both Coleman and Sellers-McKenna were WIN candidates. Both had prior trucking experience. Since there was no testing of strength, other than the "eyeball test", this court really has no way of considering whether the employer could conclude one applicant would more efficiently load and unload pipe. While Coleman's leaving the job is not particularly probative, the court does note with interest, he was "terminated for inefficiency on the job."

■ Finally, Mr. Schultz testified that in addition to other criteria, he judged an applicant's "personality" when making an employment decision. The evidence is not convincing that this subjective criterium would have mitigated in favor of hiring Coleman over Sellers-McKenna. Indeed, Sellers-McKenna's "personality" was not discussed among those responsible for the hiring decision. The court does not suggest this criterium was used for other than "legitimate reasons in the past", *Nanty v. Barrows Co.*, 660 F.2d at 1334, since in the past, only men have applied for the position. It is concluded, however, that defendant did utilize subjective criteria, and in this instance, has not met its burden of showing clearly and convincingly that Ms. Sellers-McKenna would

not have been favored over Mr. Coleman absent the fact she was not seriously considered an applicant for the reason she is a woman.

Having concluded that Sellers-McKenna would have been the applicant hired in the absence of unlawful discrimination, it is necessary to determine the more difficult question of how much backpay, if any is appropriate under the circumstances.

While the award of backpay is not an "automatic or mandatory remedy", Title VII's legislative history makes it clear that district judges, in exercising their "discretionary" powers, should deny backpay "only for reasons which, if applied generally, would not frustrate the central statutory purposes of *eradicating discrimination* throughout the economy and *making persons whole* for injuries suffered through past discrimination." Emphasis added. *Albemarle v. Moody*, 422 U.S. 405, 415, 421, 95 S.Ct. 2362, 2370, 2373, 45 L.Ed.2d 280 (1975). *See*, also, *Shah v. Mt. Zion Hospital and Medical Center*, 642 F.2d 268, 272 (9th Cir. 1981). The court is also mindful that the absence of bad faith in this case merely "opens the door to equity", and does tip "the scales" in the employer's favor. *Albemarle, supra*, 422 U.S. at 422, 95 S.Ct. at 2373. Finally, it is well established that a plaintiff who has voluntarily removed herself from the labor market or otherwise failed to mitigate is not entitled to backpay. *See* 42 U.S.C. § 2000e–5(g). The standard applied to the mitigation factor is that of "reasonable diligence". *Id.*

Based upon the testimony and exhibits, the court has constructed the attached chart showing Ms. Sellers-McKenna's actual earnings before October 1, 1979, compared with those she would have earned with defendant.

Exhibit 15 showed that Mr. Coleman averaged a layoff of one month per year during his employment with defendant. The testimony was that there was no obligation to rehire following layoffs. On at least one occasion a driver junior in seniority to another was rehired before the senior teamster. Additionally, the testimony was

that most truck drivers viewed heavy truck driving positions as a beginning or relatively temporary job and hoped to be promoted to a less physically demanding position. Finally, the evidence showed that no truck driver except for possibly one had been employed by defendant for the length of time for which Ms. Sellers-McKenna seeks backpay. The evidence convincingly shows this demanding position to generally be short term.

This court concludes that backpay may be awarded, as computed on the attached chart, through September, 1979. Given the particular circumstances, the court is convinced that this applicant would have left the high turnover position in October, 1979, in favor of the position which she took with R. A. Hanson. The latter position paid a beginning wage of $1,025.00 per month, somewhat higher than that being paid truck drivers at Spokane Concrete.

Accordingly, this court believes that Ms. Sellers-McKenna would be "made whole"

within the meaning of Title VII by the award of backpay differential from May 9, 1977 through September, 1979 in the amount of $18,328.00. Such an award is further consistent with the other "purpose" of the act, that is, to "[eradicate] discrimination throughout the economy." *Albemarle v. Moody*, 422 U.S. 405, 421, 95 S.Ct. 2362, 2373 (1975). Plaintiff is directed to furnish to the court the 7% interest factor compounded quarterly. Damages commensurate with health benefits are not a part of the relief since no evidence was presented.

Defendant shall be enjoined from engaging in employment practices which unlawfully discriminate unless defendant establishes professionally acceptable methods of testing. As stated earlier, it is the ruling of the court that the "eyeball" test is not professionally acceptable.

Upon entry of the court's final Order and Judgment, EEOC shall likewise recover its costs.

| QUARTERS | May 9 June, 1977 | July Sept. 1977 | October December 1977 | January March 1978 | April June 1978 | July Sept. 1978 | October December 1978 | January March 1979 | April June 1979 | July Sept. 1979 | (Totals to Oct. 1979) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Would have earned | 1,457 | 3,698 | 3,698 | 3,698 | 4,309 | 4,309 | 4,309 | 1,016 | 3,634 | 3,634 | 33,762 |
| Actual earnings | 300 | 300 | 1,656 | 2,471 | 2,471 | 2,471 | 2,471 | 2,471 | 823 | -0- | 15,434 |
| Difference | 1,157 | 3,398 | 2,042 | 1,227 | 1,838 | 1,838 | 1,838 | -0- | 2,811 | 3,634 | 18,328 |