Ernestine KING, Appellant,

v.

TRANS WORLD AIRLINES, INC., Appellee.

No. 83–1655.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 14, 1983.

Decided June 28, 1984.

Robert L. Driscoll, Richard Monaghan, Stinson, Mag & Fizzell, Kansas City, Mo., for appellee.

W. Terrence Kilroy, Russell S. Jones, Jr., Shughart, Thomson & Kilroy, P.C., Kansas City, Mo., for appellant.

Before McMILLIAN, JOHN R. GIBSON and BOWMAN, Circuit Judges.

McMILLIAN, Circuit Judge.

Ernestine King appeals from a final judgment entered in the District Court for the Western District of Missouri rejecting her claim that Trans World Airlines, Inc. (TWA), discriminated against her on the basis of sex in violation of Title VII of the Civil Rights Act of 1964, § 703(a), 42 U.S.C. § 2000e-2(a) (1976), when it refused to hire her as a kitchen helper in the dining and commissary department of its Kansas City operation. For reversal appellant argues that the district court erred in (1) failing to find discrimination on the basis of sex on this record and (2) excluding the testimony of Francine Gill. For the reasons discussed below, we reverse the judgment of the district court and remand the case for further proceedings consistent with this opinion.

The following statement of facts is based upon the district court's memorandum opinion, *King v. Trans World Airlines, Inc.*, No. 79-0642-CV-W-8 (W.D.Mo. Apr. 12, 1983). Appellant is the mother of four children. She was employed by TWA as a probationary kitchen helper in the Kansas City dining and commissary department from June 18, 1975, to September 7, 1975, when she was terminated during a reduction-in-force. Because she was terminated before she completed the ninety-day probationary period, appellant was not eligible for automatic recall. TWA did, however, classify appellant as "eligible for rehire." In May 1976 appellant filled out several employment applications in TWA's Kansas City personnel office, including an application for positions in the dining and commissary department. In November 1976 the supervisor of personnel administration notified appellant that she needed the approval of the manager of the dining and commissary department, U.S. Powell, in order to be rehired in that department.

Appellant contacted Powell and arranged an interview. It is undisputed that during this interview Powell asked appellant questions about her pregnancy during her probationary employment, her marital status, the nature of her relationship with another TWA employee, the number of children she had and whether they were illegitimate, her childcare arrangements, and her future childbearing plans. It appears that this was the extent of the interview.

Appellant contacted Powell again about a week later and was told to return for another interview. During this second interview appellant's two former supervisors were present; the interview was very brief because neither supervisor remembered appellant. In late December 1976, Powell informed appellant that there were no present openings, but that he would keep her in mind. It was undisputed that during that month TWA hired ten or eleven kitchen helpers in the dining and commissary department and that the position of kitchen helper was basically an entry-level position that required little or no training or experience. It was also undisputed that job applicants were not asked questions about pregnancy, childbearing and childcare during interviews as a matter of TWA policy.

In January 1977, appellant filed a charge against TWA with the Equal Employment Opportunity Commission (EEOC), alleging race and sex discrimination and retaliation for employment discrimination complaints filed by her friend Phillip King, a TWA employee. Appellant and King were married in 1977. The EEOC found reasonable cause to believe that TWA discriminated against appellant on the basis of sex and issued a right-to-sue letter. Appellant then filed this Title VII action for declaratory and injunctive relief, seeking in particular an offer of employment and backpay. The parties stipulated the amount of backpay that would be due.

The district court found that appellant established a prima facie case of disparate treatment on the basis of sex: appellant is a member of a protected group; she ap-

plied for an available position for which she was qualified; she was not hired; and TWA continued to seek applicants for the position. TWA then rebutted the inference of discrimination by articulating the following legitimate, nondiscriminatory reasons for its refusal to hire appellant: an unfavorable recommendation from another supervisor, a close relationship with another TWA employee, and two absences during her probationary period. The district court then found that appellant failed to prove by a preponderance of the evidence that TWA's articulated reasons were pretextual and entered judgment in favor of TWA. This appeal followed.

Appellant first argues that the district court erred in failing to find sex discrimination on this record. As noted, the district court followed the analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). We agree that appellant established a prima facie case of disparate treatment. "Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the [plaintiff]." *Texas Department of Community Affairs v. Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094; *see Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978). However, we disagree with the district court's analysis of the employer's articulated reasons for its refusal to hire appellant.

At this point it is necessary to clarify the nature of appellant's claim. Appellant alleged that TWA treated her differently in the employment process by asking her particular questions during the interview that it did not ask other job applicants and used the information in deciding not to hire her.

Thus, appellant asserted that Powell conducted her interview in a different way than those of other job applicants. Appellant argued that TWA treated her differently in the hiring process, that the reason for this difference in treatment was sex, and that as a result TWA did not hire her. But for the fact that appellant alleged that TWA treated her differently in the hiring process, we would have no reason to fault the district court's analysis of the employer's articulated reasons for its refusal to hire.[1] However, TWA's articulated reasons for refusing to hire appellant do not explain why appellant was treated differently during the interview. *Cf. Ostroff v. Employment Exchange, Inc.*, 683 F.2d 302, 304 (9th Cir.1982) (per curiam) (woman alleged sex discrimination when employment agency falsely told her that advertised position was filled without asking her about her qualifications; employment agency's defense that plaintiff was not qualified for position held irrelevant where plaintiff was summarily rejected without considering her qualifications); *Nanty v. Barrows Co.*, 660 F.2d 1327, 1332 (9th Cir.1981) (employer summarily rejected qualified minority applicant without interview or opportunity to file application; employer's reasons why applicant would not have been hired did not explain why applicant was summarily rejected); *EEOC v. Spokane Concrete Products, Inc.*, 534 F.Supp. 518, 523 (E.D. Wash.1982) (female applicant for truck driving position was given perfunctory interview different than interview given male applicant; employer's "eyeball test" for strength did not meet business necessity defense and sex was not shown to be bona fide occupational qualification for position).

■ Of course, if a job applicant proved unlawful discrimination in the hiring process, then the employer would be entitled to prove by clear and convincing evidence that the job applicant would not have been

---

1. Here, appellant alleged that she was treated differently in the hiring *process* and as a result was not hired. Ordinarily, the plaintiff does not challenge the hiring process itself but argues that the hiring *decision* was the product of unlawful discrimination. *See Texas Department of* *Community Affairs v. Burdine*, 450 U.S. 248, 250–56, 101 S.Ct. 1089, 1092–95, 67 L.Ed.2d 207 (1981). Thus, concentration on the reasons for the plaintiff's "rejection" may be misleading in cases like the present one.

hired anyway in order to limit the job applicant's *relief. See East Texas Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 395, 404 n. 9, 97 S.Ct. 1891, 1897 n. 9, 52 L.Ed.2d 453 (1977) ("Even assuming, *arguendo,* that the company's failure even to consider the applications was discriminatory, the company was entitled to prove at trial that the respondents had not been injured because they were not qualified and would not have been hired in any event."); *Day v. Mathews,* 174 U.S.App.D.C. 231, 530 F.2d 1083, 1085 (1976) (per curiam); *accord Patterson v. Greenwood School District 50,* 696 F.2d 293, 295 (4th Cir.1982); *League of United Latin American Citizens v. City of Salinas Fire Department,* 654 F.2d 557, 558–59 (9th Cir.1981); *Davis v. Board of School Commissioners,* 600 F.2d 470, 474 (5th Cir.1979). *See generally* Brodin, *The Standard of Causation in the Mixed-Motive Title VII Action: A Social Policy Perspective,* 82 Colum.L.Rev. 292 (1982).

 Here, it is undisputed both that Powell asked appellant pregnancy, childbearing and childcare questions during the interview and that, according to TWA policy, these questions were not asked during the interviews of either male or female job applicants. Appellant's prima facie case raised the inference that this difference in treatment at the interview stage of the hiring process was at least in part the product of unlawful discrimination. *See Coleman v. Missouri Pacific R.R.,* 622 F.2d 408, 410 (8th Cir.1980) (unlawful bias may be merely contributing factor rather than sole factor in employer's decision). TWA's explanation that appellant's interview was not a "real" interview because appellant did not precisely follow the normal application process was rejected by the district court. The district court found that TWA treated appellant as a job applicant. This factual finding is not clearly erroneous. None of the three reasons articulated by TWA explains why appellant's interview differed from those of other applicants. Of the three reasons, the no-spouse rule could explain only the inquiry about appellant's relationship with another TWA employee. *See Espinoza v. Thoma,* 580 F.2d 346, 348–49 (8th Cir.1978) (no immediate family rule applied to non-married couple upheld), *citing Yuhas v. Libbey-Owens-Ford Co.,* 562 F.2d 496, 499–500 (7th Cir.1977) (no-spouse rule upheld), *cert. denied,* 435 U.S. 934, 98 S.Ct. 1510, 55 L.Ed.2d 531 (1978). However, concern about the no-spouse rule does not explain why appellant was asked pregnancy, childbearing and childcare questions unlike other job applicants. Although a poor recommendation or absences would arguably explain an inquiry about the applicant's work or attendance record, there was no evidence that appellant's work or attendance record was the reason for appellant's different interview. Moreover, there was no evidence that *male* job applicants with similar attendance records were questioned about the possible reasons for their absences, much less about pregnancy, childbearing and childcare. In fact, it was undisputed that TWA policy prohibited asking applicants these questions during interviews. Thus, even assuming for purposes of argument that asking questions about pregnancy, childbearing and childcare in job interviews does not in itself violate Title VII,[2] it

**2.** We note that, except for the question about any relationship to a present TWA employee and possibly the question about childcare, questions about pregnancy and childbearing would be unlawful per se in the absence of a bona fide occupational qualification. The EEOC Sex Discrimination Guidelines, 29 C.F.R. § 1604.7 (1983), prohibit this type of questioning: "Any pre-employment inquiry in connection with prospective employment which expresses directly or indirectly any limitation, specification or discrimination as to sex shall be unlawful unless based upon a bona fide occupational qualification." The questions about pregnancy and childbearing are clearly sex-based. *See* 42 U.S.C. § 2000e(k) (Pregnancy Discrimination Act). Given the time of the events in question, late 1976, it could be argued that *General Electric Co. v. Gilbert,* 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976) (holding that employer's disability benefits plan did not violate Title VII because of failure to cover pregnancy-related disabilities, absent any indication of pretext), would control. However, we note that *Gilbert* was essentially an insurance benefits case and did not involve the foreclosing or restricting of

is clear that an employer cannot have two interview policies for job applicants with poor work records, poor attendance records, small children or some other characteristic—one for men and one for women. *Phillips v. Martin Marietta Corp.*, 400 U.S. 542, 544, 91 S.Ct. 496, 498, 27 L.Ed.2d 613 (1971) (per curiam) (employer policy of not accepting applications from women with pre-school age children, while accepting applications from other women and men with pre-school age children, held violation of Title VII).

■ Because TWA offered no reason to explain why appellant's interview was different, TWA in effect remained "silent in the face of the presumption [of unlawful discrimination]," *Texas Department of Community Affairs v. Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094. Thus, we hold that the district court erred in failing to find sex discrimination on this record. Appellant's prima facie case was sufficient to meet her ultimate burden of persuasion and burden of producing evidence of unlawful discrimination. We reverse the district court's judgment and remand the case for further proceedings consistent with this opinion. The district court on remand is instructed to enter judgment in favor of appellant and to enter an injunction prohibiting TWA from future, or continued, discrimination against appellant on the basis of sex.

When a legitimate candidate for a job has demonstrated that [she] has been the subject of unlawful discrimination in the employment process, [she] is entitled to an injunction against future, or continued, discrimination. The purpose of such an order is to ensure that, at the very least, the applicant will receive full and fair consideration from the employer if [she] seeks similar employment in the future.

*Nanty v. Barrows Co.*, 660 F.2d at 1333 (footnote omitted); *see* 42 U.S.C. § 2000e–5(g). In addition, by proving unlawful discrimination, appellant prevailed on a significant issue in the litigation. The district court should consider appellant a prevailing party for the purposes of an award of attorney's fees and is instructed to determine a reasonable fee on remand. *See Nanty v. Barrows Co.*, 660 F.2d at 1334 n. 10; *cf. Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (42 U.S.C. § 1988).

As noted above, the parties stipulated the amount of backpay which would be owed. However, the district court must determine whether TWA would have hired appellant, absent the unlawful discrimination, before appellant is entitled to complete relief in the form of an order directing TWA to offer to hire appellant and to backpay. "Unlawful discrimination having been proven, ... the burden is on [the employer] to prove by clear and convincing evidence that [appellant] would not have been ... hired in the absence of discrimination." *Ostroff v. Employment Exchange, Inc.*, 683 F.2d at 304 (citations omitted); *accord Patterson v. Greenwood School District 50*, 696 F.2d at 295; *League of United Latin American Citizens v. City of Salinas Fire Department*, 654 F.2d at 559; *Davis v. Board of School Commissioners*, 600 F.2d at 474; *Day v. Mathews*, 530 F.2d at 1085–86. "The burden of showing that proven discrimination did not cause a plaintiff's rejection is properly placed on the defendant-employer because its unlawful acts have made it difficult to determine what would have transpired if all parties had acted properly." *League of United Latin American Citizens v. City of Salinas Fire Department*, 654 F.2d at 559, *citing Day v. Mathews*, 530 F.2d at 1086. On remand the district court should

---

employment opportunities on the basis of pregnancy. *See MacLennan v. American Airlines, Inc.*, 440 F.Supp. 466 (E.D.Va.1977); *see generally* B. Schlei & P. Grossman, Employment Discrimination Law 383–89 (2d ed. 1982). The childcare question is in itself neutral but may

have a disparate impact upon women and reflect "an asymmetrical stereotype of the family responsibilities of males and females." 1 A. Larson & L. Larson, Employment Discrimination—Sex § 11.22, at 3–16 (1983).

reevaluate the evidence in light of the proper standard of proof.

■ Given our disposition of appellant's first argument, it is unnecessary to reach the evidentiary question. However, we note that appellant's argument that the district court erred in excluding for substantive purposes the testimony of Francine Gill, a former TWA personnel department employee, has merit. The district court excluded Gill's testimony on the ground that it was too remote and therefore irrelevant because Gill had been furloughed or laid off by TWA in April 1975, approximately one year before appellant sought reemployment, and because Powell had attended a TWA employment practices seminar during the period between the time that Gill was furloughed and appellant's interview. The district court admitted Gill's testimony for impeachment purposes only.

According to the offer of proof, Gill would have testified that she had been employed in the personnel department for two years (1973–1975) as an interviewer; that she repeatedly told Powell that it was unlawful to consider whether female applicants had children or childcare in making employment decisions; that Powell frequently discussed his concern about childcare with respect to female, but not male, applicants; that Powell instructed her not to send him female applicants "who did not have their childcare problems worked out"; that Powell routinely rejected female applicants with children if other applicants were available; and that Powell did hire employees without going through the personnel office. This testimony was relevant to appellant's theory that Powell had a history of discriminating against female applicants with children in making employment decisions because he believed that such employees' childcare problems would create an unacceptably high rate of absenteeism.[3]

*See Miller v. WFLI Radio, Inc.,* 687 F.2d 136, 139 (6th Cir.1982).

TWA argues that Gill's proffered testimony about Powell's past employment practices was too remote, especially because Powell had attended a TWA employment practices seminar in 1976. We disagree. Whether Powell's decision-making process had changed was one of the issues to be determined at trial. Appellant's theory was that Powell discriminated against female applicants with children before and after he attended the seminar. Gill's testimony would have been relevant, particularly in light of her testimony that even before Powell attended the seminar in 1976, he was aware that disfavoring female applicants with children was unlawful but continued to do so. *Cf. Donnell v. General Motors Corp.,* 576 F.2d 1292, 1298 n. 12 (8th Cir.1978) (evidence of pre-Act discrimination not without probative force, particularly when little change in decision-making process).

Accordingly, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion. The district court on remand is directed to enter injunctive relief, in favor of appellant, against future, or continued, sex discrimination, reevaluate the evidence under the proper standard of proof and determine whether TWA would not have hired appellant in the absence of discrimination, and award appellant a reasonable attorney's fee. We express no opinion with respect to the scope of relief.

Costs on appeal awarded to appellant. Counsel for appellant is directed to submit a detailed and specific request for attorney's fees for this appeal.

---

**3.** *See In re Consol. Pretrial Proceedings in the Airline Cases,* 582 F.2d 1142, 1145–47 (7th Cir. 1978) (airlines' no-motherhood policy justified in part on ground that mothers, but not fathers, of young children would have unacceptably high rate of absenteeism; no evidence supporting no-motherhood as bona fide occupational qualification), *rev'd on other grounds sub nom. Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982); *see generally* 1 A. Larson & L. Larson, Employment Discrimination—Sex § 16.30.