**Linda S. STUKEY, Plaintiff,**

v.

**UNITED STATES AIR FORCE,
et al., Defendants.**

No. C–3–87–225.

United States District Court,
S.D. Ohio, W.D.

Jan. 31, 1992.

Thomas Lawrence Whiteside, Kuczak, Stukey & Associates, Dayton, Ohio, Lee Hornberger, Cincinnati, Ohio, for plaintiff Linda S. Stukey.

Patrick Dennis Quinn, U.S. Attys. Office, Dayton, Ohio, for defendants U.S. Air Force, Edward C. Aldridge, Jr. and Air Force Institute of Technology.

## ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT, MOTION TO DISMISS, MOTION TO ALTER FINAL PRE–TRIAL ORDER, AND MOTION TO STRIKE DEFENDANT'S WITNESS LIST

SPIEGEL, District Judge.

### INTRODUCTION

This matter is before the Court on the Plaintiff's motion in limine and/or for a partial summary judgment (doc. 59), the Defendants' response (doc. 63), and the Plaintiff's reply (doc. 66). Also before the Court is the Defendants' motion for partial summary judgment (doc. 63), and the Plaintiff's response (doc. 67). Further before the Court is the Defendants' motion to file out of time their motion to dismiss (doc. 65), the Defendant's motion to dismiss (doc. 65), and the Plaintiff's response (doc. 71). We hereby grant the Defendants' motion to file out of time, and thus, we will consider the Defendants' motion to dismiss in this opinion.

Further before the Court is the Plaintiff's motion to alter or amend the Final Pre–Trial Order (doc. 72), the Defendants' response (doc. 79), and the Plaintiff's reply (doc. 80). Finally, the Plaintiff has filed a motion in limine to strike the Defendants' witness list (doc. 73), the Defendants have responed (doc. 74), and the Plaintiff has replied (doc. 77).

This case involves allegations of Title VII violations. The Plaintiff claims that the Defendants discriminated against her because of gender in her application for a position as a law professor. In this opinion, we will first consider the Plaintiff's motion in limine and/or motion for partial summary judgment, followed by consideration of the Defendants' cross motion for partial summary judgment. Next, we will

analyze and rule upon the Defendant's motion to dismiss and the Plaintiff's motion to amend the Final Pre–Trial Order. Finally, we will consider the Plaintiff's motion to strike the Defendants' witness list.

## THE MOTIONS FOR SUMMARY JUDGMENT

The Plaintiff has filed a motion in limine and/or for a partial summary judgment. The Plaintiff's motion is not a true motion in limine. A motion in limine is a "... protective order against prejudicial questions and statements." *Blacks Law Dictionary* 526 (5th ed.1989). The Plaintiff's motion requests the Court to rule upon whether Title VII violations have occurred. In contrast, a ruling in limine bars the admission of irrelevant and prejudicial information.

Thus, this Court will consider the Plaintiff's motion as a motion for summary judgment. The Plaintiff's motion for summary judgment was not timely filed. However, in light of the fact that the Plaintiff's counsel has recently changed, we will consider the merits of the Plaintiff's motion.

## BACKGROUND

Ms. Stukey was an employee of the United States Air Force. She began her employment with the Air Force as a GS–9, attorney-advisor, with the Base Staff Judge Advocate Office, at the Wright Patterson Air Force Base ("Wright Patterson"). The Air Force eventually promoted Ms. Stukey to GS–11, and then to GS–12 in September, 1983. She received step increases in 1984 and 1985 based upon satisfactory job performance as a GS–12.

In January, 1985, Ms. Stukey applied for one of two positions available as a Professor of Contract Law and Contract Management at Wright Patterson. These positions were in the Air Force Institute of Technology ("AFIT"). The AFIT formed a selection subcommittee ("subcommittee") in order to recommend two candidates for the open positions. Men composed the entire subcommittee.

The subcommittee first considered the paper applications of the applicants. After the initial scoring of the applications, the subcommittee ranked Ms. Stukey eighth out of sixteen applicants. After veterans' preferences were considered, Ms. Stukey ranked thirteenth out of sixteen applicants. Nevertheless, because other applicants declined further consideration for the job, Ms. Stukey was among the eight applicants interviewed for the two positions.

The subcommittee proceeded to conduct interviews for the job positions. Part of the interview process consisted of teaching a mock class, which was videotaped. The videotaping was continued during the initial portion of the interview process. The subcommittee asked Ms. Stukey certain questions, which it did not ask of the male applicants. These questions involved Ms. Stukey's marital status, her ability to work with men, her opinions on travelling with men, and her child care arrangements when she travelled. The maximum possible score was ten points. The subcommittee awarded Ms. Stukey three points. Ms. Stukey ranked eighth out of eight interviewees. She never received a job offer.

The subcommittee recommended to the Dean of the AFIT that two males should be hired. The Dean of AFIT accepted the subcommittee's recommendation and the two males were hired.

Ms. Stukey eventually filed a timely complaint in this Court, alleging sex discrimination.

## STANDARD

■ The narrow question that we must decide on a motion for summary judgment is whether there is "no genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The Court cannot try issues of fact on a Rule 56 motion, but is empowered to determine only whether there are issues to be tried. *In re Atlas Concrete Pipe, Inc.*, 668 F.2d 905, 908 (6th Cir.1982). The moving party "has the burden of showing *conclusively* that there exists no genuine issues as to a material fact and the evidence together with all inferences to be drawn therefrom

must be read in the light most favorable to the party opposing the motion." *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir.) (emphasis original), *cert. denied*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979). And, "while the movant's papers are to be closely scrutinized, those of the opponent are to be viewed indulgently." *Id.* at 63. "[T]he District Court [is] obligated to consider not only the materials specifically offered in support of the motion, but also all 'pleadings, depositions, answers to interrogatories, and admissions' properly on file and thus properly before [the] court." *Id.* (quoting Rule 56(c), Fed.R.Civ.P.). Summary judgment "must be used only with extreme caution for it operates to deny a litigant his day in court." *Id.* We are further guided by the Supreme Court's relatively recent elaboration of this standard in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial....

477 U.S. at 322, 106 S.Ct. at 2552. Summary judgment is not appropriate if a dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

We use this standard in both the Defendants' and the Plaintiff's respective motions for summary judgment.

## THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

■ We will first consider the Plaintiff's motion for summary judgment. In considering the Plaintiff's motion, the issue that arises is whether the subcommittee's questions of Ms. Stukey constitute a *per se* violation of Title VII, or whether the subcommittee's questions are merely evidence of a Title VII violation. We conclude that the subcommittee's questions constitute evidence of a *per se* violation of Title VII.

■ Title VII provides, in part:
> It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex...." 42 U.S.C. § 2000e–2(a)(1) (1991).

A plaintiff may establish a Title VII violation by two different methods. First, a plaintiff may offer direct proof of discrimination. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). Second, a plaintiff may also establish a Title VII violation by indirect evidence of discrimination. If a plaintiff offers proof by indirect evidence of discrimination, an inference of discrimination arises after the plaintiff has made out a *prima facie* case of discrimination under Title VII. The employer must then rebut the inference by articulating a legitimate, non-discriminatory reason for its actions. The final burden of persuasion remains on the plaintiff to demonstrate that the reasons offered by the employer were merely a pretext for discrimination. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–804, 93 S.Ct. 1817, 1824–1825, 36 L.Ed.2d 668 (1973).

The United States Court of Appeals for the Sixth Circuit has recently considered a case that possesses similarities to the one now before the Court. In *Cesaro v. Lakeville Community School District*, 953 F.2d 252 (6th Cir.1992), the plaintiff, Ms. Cesaro, served as a special education teacher for the defendant, Lakeville Community School District. The Lakeville Community School District decided to employ a Director of Special Education, for which Ms. Cesaro applied. The Lakeville Community School District interviewed the five applicants for the position without any gender bias.

Based upon the interviews and the applications, the Superintendent of Schools recommended a male as the most qualified applicant. *Id.* at 254.

Ms. Cesaro stipulated that the male who was hired was the most qualified, but claimed sex discrimination had occurred in the hiring process. She averred that the Superintendent's discrimination had resulted in the search for candidates outside the school district. In this search, the Superintendent had found a male who eventually was hired as the Director of Special Education. *Id.*

The Sixth Circuit analyzed *Cesaro* as a mixed motive case. The *Cesaro* court found held that "... we are to look at the motive of the decision maker at the time the decision is made...." *Id.* at 254; *see also Price Waterhouse*, 490 U.S. at 241, 109 S.Ct. at 1785 (the "critical inquiry ... is whether gender was a factor in the employment decision at the moment it was made...."). As a result, the *Cesaro* court held that the plaintiff was not a victim of discrimination, because the school board did not consider the applicants' genders in their hiring decision.

The United States Court of Appeals for the Seventh Circuit recently decided an even more factually analogous case to the matter now before this Court. In *Bruno v. City of Crown Point*, 950 F.2d 355 (7th Cir.1991), the plaintiff applied for a position as a paramedic with the Crown Point Emergency Medical Services Department. In her interview for the job, the plaintiff, a female, was singled out and asked questions concerning her family circumstances. Particularly, the interviewer asked her plans to have children and how her husband would feel about her working twenty-four hour shifts. Following the interview, Crown Point Emergency Medical Services hired a male, and Ms. Bruno subsequently sued for sex discrimination. *Id.* at 358, 359.

In analyzing the facts in *Bruno*, the court considered whether the plaintiff had demonstrated a Title VII violation by direct or indirect evidence. The court recognized that to ask only female applicants questions concerning child care and family matters was a result of the interviewer's sexual stereotypes. The court concluded, however, that "[m]erely showing the questions were asked ... is not sufficient to prove intentional discrimination. Questions 'based on sex stereotypes do not inevitably prove that gender played a part in a particular employment decision.'" *Id.* at 362 (quoting *Price Waterhouse*, 490 U.S. at 251, 109 S.Ct. at 1791). The court then considered whether the plaintiff had offered indirect evidence of sex discrimination under the shifting burden rubric announced in *Burdine* and *McDonnell Douglas*. The court concluded that the "... evidence does not support the conclusion that sex was a determining factor in the hiring decision." *Id.* at 364.

Nevertheless, other courts have reached apparently contradictory holdings. In *King v. Trans World Airlines, Inc.*, 738 F.2d 255 (8th Cir.1984), the plaintiff applied for a job as a kitchen helper in the dining and commissary department of the defendant. In her interview, the defendant asked the plaintiff questions about her pregnancy, her marital status, her relationship with other employees, the number of children she had and whether they were legitimate, her child-care arrangements, and her future childbearing plans. *Id.* at 256. The Court stated:

> Because TWA offered no reason to explain why appellant's interview was different, TWA in effect remained 'silent in the face of the presumption [of unlawful discrimination]'.... Thus, we hold that the district court erred in failing to find sex discrimination on this record.

*Id.* at 259 (citations omitted); *see also Barbano v. Madison County*, Nos. 82–CV–1160, 82–CV–1161, 1988 WL 96581, at *7–8, LEXIS 10450, at *20 (N.D.N.Y. Sept. 13, 1988), *aff'd*, 922 F.2d 139 (2d Cir.1990) (asking only female applicants about such topics as plans for children is probably "... unlawful per se under Title VII").

In the matter now before this Court, we follow the reasoning of the Seventh Circuit in *Bruno* and conclude that the subcommittee's questions of Ms. Stukey were not *per se* violations of Title VII. Ms. Stukey has

not presented direct or indirect evidence to meet her burden in moving for summary judgment.

We must first weigh whether Ms. Stukey has presented direct evidence of discrimination, and then consider whether Ms. Stukey has demonstrated discrimination under the shifting burden of proof stated in *Burdine* and *McDonnell Douglas.*

Congress enacted Title VII to ensure non-discriminatory employment decisions. *See Burdine,* 450 U.S. at 259, 101 S.Ct. at 1096; *McDonnell Douglas,* 411 U.S. at 801, 93 S.Ct. at 1823. In the case before this Court, it is undisputed that the subcommittee subjected Ms. Stukey to a discriminatory interview. However, a question of fact exists as to whether the Defendants made a discriminatory employment *decision.* Thus, it remains factually ambiguous "... whether gender was a factor in the employment decision at the moment it was made...." *Price Waterhouse,* 490 U.S. 228, 241, 109 S.Ct. 1775, 1785, 104 L.Ed.2d 268 (1989); *Cesaro,* 953 F.2d 252 (6th Cir. 1992). Thus, Ms. Stukey has not met her burden in moving for summary judgment by arguing that direct evidence exists of Title VII violations.

Similarly, Ms. Stukey does not merit summary judgment through the burden-shifting method of proof outlined in *McDonnell Douglas* and *Burdine.* Ms. Stukey established a *prima facie* case by showing that she was in a protected class, that she applied for a position or which she was qualified, and that a man was eventually hired. *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093.

The Defendants have articulated a legitimate, non-discriminatory reasons for not hiring Ms. Stukey. The two males who were hired "... were selected because of their demonstrated performance in the [teaching] presentation and their backgrounds," according to the Department Chairman. Joint Trial ex. 1, Tab A–7, at 2.

Because the Defendants have met their burden, the Plaintiff must prove by a preponderance of the evidence at trial that the legitimate reasons offered by the Defendants were not their true reasons for their actions, but rather served as a pretext for discrimination.

Accordingly, we deny the Plaintiff's motion for summary judgment and/or motion in limine.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

■ We now turn our attention to the Defendant's motion for partial summary judgment. In Ms. Stukey's job application, she rated as a qualified applicant and therefore received an interview. At this interview, she was singled out as a female and asked questions arising from sexual stereotypes. Following this interview, she was ranked eighth out of eight interviewees. She never received a job offer. The motivations behind the Defendants' decision not to offer Ms. Stukey a position remain unclear. Thus, a genuine issue of material fact exists as to whether the Defendants engaged in sexual discrimination in their hiring determinations.

Accordingly, we deny the Defendants' motion for summary judgment.

## PLAINTIFF'S RETALIATION CLAIMS AND PLAINTIFF'S MOTION TO ADD COMPENSATORY DAMAGES AND A JURY

The Defendants have moved to dismiss or for summary judgment on Ms. Stukey's claims involving reprisal and retaliation (doc. 65), to which the Plaintiff has responded (doc. 71). Ms. Stukey has moved to add compensatory damages and a jury trial under the recently adopted 1991 Civil Rights Act (doc. 72), to which the Defendant's have responded (doc. 79), and the Plaintiff has replied (doc. 80).

In 1987, Ms. Stukey brought this employment discrimination suit against the Defendants. Two years later, Ms. Stukey amended her complaint alleging that the Defendants had retaliated against her for filing her lawsuit, and that as a result of this retaliation she had left her employment with the government.

The Defendants argue that Ms. Stukey's discrimination claims should be dismissed

on the following grounds: (1) lack of subject matter jurisdiction because Ms. Stukey did not exhaust her administrative remedies; (2) Ms. Stukey's case does not fall within the exception to the requirement for administrative exhaustion because the alleged reprisal did not occur after the filing of the judicial action and the alleged reprisal was not brought to the attention of the EEOC; (3) Ms. Stukey's claim for reprisal was not like or reasonably related to her previous complaint of sex discrimination; (4) Ms. Stukey's claim for reprisal is moot because of the Court's order dismissing her allegations of constructive discharge.

In a separate motion, the Plaintiff, Ms. Stukey, argues that the Final Pre–Trial Order should be amended to provide for compensatory damages and a jury trial. The thrust of the Plaintiff's argument is that the Civil Rights Act of 1991 retroactively allows compensatory damages and a jury trial in Title VII actions.

This Court finds no reason to delve into the merits of both the Defendants' motion to dismiss and the Plaintiff's motion to amend the Final Pre-trial Order to include compensatory damages and a jury trial.

The Federal Rules of Civil Procedure provide that "[t]he order following a final pretrial conference shall be modified only to prevent manifest injustice." Fed. R.Civ.P. 16(e). The rationale behind this rule is to allow the parties sufficient time to adequately prepare for trial. *See generally, Pac. Indem. Co. v. Broward County,* 465 F.2d 99 (5th Cir.1972). By the time the parties have submitted the final Pre–Trial Order, generally discovery has been completed, dispositive motions have been filed, and the parties know the causes of action and the defenses to them.

In the matter before this Court, the parties submitted a joint Final Pre–Trial Order, which the Court has approved (doc. 55). Thus, the focus of this Court's inquiry is whether manifest injustice would result if the Final Pre–Trial Order is not amended according to either the Defendants' or the Plaintiff's proposed modifications.

Courts have considered whether to permit the modification of final pre-trial orders. In *In re Control Data Corp. Securities Litigation,* 933 F.2d 616 (8th Cir.1991), the appellate court considered whether the plaintiffs could establish a new theory of liability at trial. The *In re Control* court refused to allow the plaintiffs to pursue this newly added theory of liability. The court reasoned that " 'a party may not offer evidence or advance theories which violate the terms of the pre-trial order.' " *Id.* at 621 (quoting *Glismann v. AT & T Technologies,* 827 F.2d 262, 267 (8th Cir.1987).

▇ We first consider the Defendants' proposed modification. The Defendants seek to eliminate Ms. Stukey's claims of retaliation. The Defendants knew, however, that the Plaintiffs had made a claim based upon retaliation. In May 1989, Ms. Stukey filed an Amended Complaint in which, she stated that the "Plaintiff was constructively discharged as a direct and proximate cause of the course of retaliatory conduct engaged in by Defendant's [sic]...." Doc. 23, at 1.

Moreover, this Court stated to Defendants' counsel at the Final Pre–Trial Conference that Ms. Stukey's contends "... she was forced out and that would be in the nature of constructive discharge." Final Pre–Trial Conference Transcript, at 16 (February 7, 1991) (copy attached to Plaintiff's Memorandum in Opposition, doc. 71). Consequently, we conclude that the Defendants have not demonstrated the requisite manifest injustice to allow for a modification of the Final Pre–Trial Order.

▇ The Plaintiff has moved to amend the Final Pre–Trial Order to include compensatory damages and a trial by jury under the Civil Rights Act of 1991. To reiterate the Eighth Circuit's decision in *In re Control,* " 'a party may not offer evidence or *advance theories* which violate the terms of the pre-trial order.' " *Id.* at 621 (quoting *Glismann,* 827 F.2d at 267 (emphasis added). In the Plaintiff's motion, she has asked this Court to advanced a new theory just prior to the advent of trial. Consequently, this Court finds that the Defendants would be prejudiced if this Court were to fundamentally alter the nature of

this action as the Plaintiff requests.[1] Ms. Stukey, therefore, has failed to show the requisite manifest injustice under Rule 16(e) to amend the Final Pre–Trial Order.

Accordingly, we deny the Defendant's motion to dismiss and we deny the Plaintiff's motion to amend the Final Pre–Trial Order.

### PLAINTIFF'S MOTION TO STRIKE DEFENDANTS' WITNESS LIST

Ms. Stukey has moved this Court to strike the Defendants' witness list. The Defendants' counsel failed to respond to two letters by the Plaintiff's counsel concerning whether any of the persons listed in the witness list were not going to be available to testify.[2]

This Court holds that striking the Defendants' witness list would be too draconian a result for the Defendants' failure to respond to the Plaintiff's requests. However, in order to save the Plaintiff unnecessary time and money, we order the Defendants to provide the Plaintiff with a list of only those witnesses which the Defendants *will* call at trial.

Accordingly, we deny the Plaintiff's motion to strike the Defendants' witness list, but order the Defendants to provide the Plaintiff with a list of only those witnesses which the Defendants will call at trial.

SO ORDERED.

---

1. Moreover, it remains questionable whether the 1991 Civil Rights Act may even be applied retroactively. *Cf. Mojica v. Gannett Co.,* 779 F.Supp. 94 (N.D.Ill.1991) (holding that the 1991 Civil Rights Act is retroactive) *with James v. Am. Int'l Recovery,* No. 89–CV–321, 1991 WL 281734 (N.D.Ga.1991) (holding that the 1991 Civil Rights Act is not retroactive).

2. This Court fails to understand why counsel could not have cooperated on this issue. Lack of cooperation between attorneys wastes clients' money and unnecessarily takes up the Court's time.