Larry E. **DAVIS,** Appellee,

v.

**CITY OF WATERLOO, Iowa,** Appellant.

Larry E. **DAVIS,** Appellee,

v.

**CITY OF WATERLOO, Iowa,** Appellant.

Nos. 94–1516, 95–509.

Supreme Court of Iowa.

July 24, 1996.

Ivan T. Webber of Ahlers, Cooney, Dor-
weiler, Haynie, Smith & Allbee, P.C., Des
Moines, for appellant.

Samuel C. Anderson of Swisher & Cohrt,
P.L.C., Waterloo, for appellee.

Considered by McGIVERIN, C.J., and
HARRIS, LARSON, CARTER, and
TERNUS, JJ.

CARTER, Justice.

The City of Waterloo appeals from a judg-
ment awarding damages and equitable relief
to the plaintiff, Larry E. Davis, under state
and federal civil rights statutes as a result of
a finding of employment discrimination based
on race. The dispute concerns Davis, who is
white, having been passed over for a pro-
motion in favor of Herb Thompson, an Afri-
can–American. In a separate appeal, the
city challenges the court's award of attorney
fees to Davis. After reviewing the record
and considering the arguments of the parties,

we affirm the judgment on the primary appeal. On the attorney-fee appeal, we vacate the judgment and remand the case to the district court for further proceedings.

In 1991 Ron Johnson, one of the city's two street department foremen, suffered a disabling head injury. The supervisor of the street department, Richard Grimm, and the public works director, John Meyer, initiated the process to find a temporary replacement for Johnson. Larry Davis, a white male, Herb Thompson, an African–American male, and three other white males sought consideration for the temporary foreman position. Davis received the highest evaluation score of the candidates and was recommended for the job. He began serving as temporary street department foreman in May 1991.

It remained uncertain whether Johnson would be able to return as foreman, and the city delayed declaring a vacancy in his position. During this period of delay, the temporary foreman position was reposted, applicants were reinterviewed, and Davis was again selected to fill that position on a temporary basis. Also during this time, Davis, who was not a high school graduate, acquired his GED. Had he not done so, he would not have qualified to be appointed to the foreman position on a permanent basis.

In July 1992 Johnson's job was declared vacant, and a civil service examination was administered. Davis, Thompson, and another white male, Robert Mullinex, attained the three highest scores. Davis scored highest on the examination, with Thompson and Mullinex placing second and third, respectively. They were placed on a list of qualified candidates for the foreman position. Grimm recommended Davis for the promotion. The city's affirmative action officer, Cora Turner, reviewed the candidate list and Grimm's recommendation. Because the city had no African–Americans among its nine foreman positions, she encouraged the city's public works director, Mr. Meyer, and the personnel director, Jim Rodemeyer, to recommend Thompson for the promotion. She maintained that "this would be consistent with the city's affirmative action plan." Meyer and Rodemeyer followed her advice and recommended to the city council that it promote Thompson to the foreman position.

After obtaining right-to-sue letters from the Iowa Civil Rights Commission and the United States Justice Department, Davis filed a racial discrimination suit in state court. After hearing the evidence presented, the trial court found that race played a significant role in the city's decision to promote Thompson instead of Davis. It further found that the promotion decision was based on a rationale not embraced by the city's affirmative action plan. Thus, the court concluded, there had been a violation by the city of 42 U.S.C. § 2000e–2(m) (Title VII), 42 U.S.C. § 1983, and Iowa Code section 216.6 (1995). It concluded, however, in its initial ruling, that it was uncertain who was the better qualified applicant had race not been made an issue. By way of relief, the court ordered that (1) Thompson's appointment to the foreman position be set aside; (2) after a six-month period in which Thompson was to receive additional training by the city directed toward the requirements of the foreman position, the job was to be reposted for applications; and (3) Davis should receive $10,000 as damages from the city for emotional distress and also be reimbursed for his attorney fees.

After the district court's ·initial ruling, Davis filed a motion for amended findings and judgment under Iowa Rule of Civil Procedure 179(b). In ruling on that motion, the district court modified some of its findings of fact and substantially altered the relief that it had originally granted. Other than the provision requiring special training for Thompson and the $10,000 damages awarded Davis for emotional distress, the prior order for relief was canceled. The court made a new finding of fact that Davis was clearly the most qualified applicant for the foreman position and clearly implied in that finding that it was the court's belief that, absent the improper injection of race in the promotion decision, Davis would have been appointed by the city council.

In an amended judgment and decree, the court ordered the city to appoint Davis to the position of street department foreman within thirty days of its order (by implication re-

quiring the city to create a third street department foreman position). The court awarded Davis judgment for $11,434.11 for back pay from December 15, 1992, through July 21, 1994, and back pay from July 21, 1994, through the date of his appointment for the difference between his actual earnings and the earnings he would have received as foreman. The court reaffirmed its original order that Davis be awarded $10,000 in damages for emotional distress and set a hearing for determination on Davis's application for attorney fees. Following a February hearing, the court awarded Davis attorney fees in the amount of $45,179.26.

The city appeals. It argues that: (1) Davis failed to establish a violation of state or federal civil rights laws because he did not show racial discrimination in the promotion; (2) the city's affirmative action plan provided a nondiscriminatory rationale for the promotion; (3) the order to promote Davis was an improper grant of relief; (4) Davis should not receive any award of equitable relief because he did not have clean hands; and (5) some of the elements of damage awarded were improper. As previously noted the city, in a separate appeal, challenges the amount of attorney fees that were allowed for Davis's legal counsel. Additional facts relevant to deciding these appeals will be discussed in connection with the legal issues presented.

## I. Whether Race Played a Role in the City's Decision to Promote Thompson Rather Than Davis.

The city urges that because Davis, Thompson, and Robert Mullinex were all qualified for appointment to the foreman position as a result of having achieved the top three scores on the civil service examination, the council was free to select any of the three in its sole discretion. There were, the city argues, a number of nonracial reasons why Thompson might have been favored for the promotion. Using this premise, the city suggests that Davis cannot complain of the council's ultimate choice. Were this a case being decided under the civil service laws for public employees, this might be a valid contention. But, this is a racial discrimination case being decided under federal and state statutory protections against discrimination in employment, including public employment.

■ Within the arena of federal employment discrimination legislation (Title VII of the Civil Rights Act of 1964, 75 Stat. 253, as amended, 42 U.S.C. § 2000e–2(m)), it has been made abundantly clear that this legislation protects white persons from discrimination based on race as much as it does African–American persons and other racial minorities. *United Steelworkers v. Weber,* 443 U.S. 193, 201, 99 S.Ct. 2721, 2726, 61 L.Ed.2d 480, 487 (1979); *McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273, 281, 96 S.Ct. 2574, 2579, 49 L.Ed.2d 493, 501 (1976). Because public employment decisions constitute state action, the constitutional dimensions of this issue under the Equal Protection Clause of the federal constitution and our Iowa Constitution prompt us to take a similar view in applying the employment discrimination laws contained in Iowa Code section 216.6.

■ In adjudicating such controversies, it becomes necessary for the trier of fact to go beyond a search for legitimate reasons upon which a challenged employment decision might be based and to seek out the real reason for the decision that was made. This is not, as the city suggests, substituting the court's judgment for that of the city council. It is, rather, a determination of whether the council's judgment was based on legally impermissible factors.

■ In the present case, both the alleged state statutory violation and the alleged federal statutory violations were tried at law. Consequently, the trial court's findings of fact on these issues are binding on review, if supported by substantial evidence, and the case is otherwise reviewed for correction of legal error. *Hulme v. Barrett,* 480 N.W.2d 40, 41 (Iowa 1992); *Smith v. ADM Feed Corp.,* 456 N.W.2d 378, 384 (Iowa 1990); *Landals v. George A. Rolfes Co.,* 454 N.W.2d 891, 892–93 (Iowa 1990); *Lynch v. City of Des Moines,* 454 N.W.2d 827, 829 (Iowa 1990).

■ The evidence that race played a controlling role in Thompson's appointment is

vividly clear. Traditionally, the decision of whose name is submitted to the council with recommendation for appointment or promotion within the street department was left to the head appointing authority for that department. This was the public works director, Mr. Meyer. In making these decisions, he relies heavily on the recommendation of the department head involved, in this case, Mr. Grimm.

Mr. Grimm testified that, based on both experience and ability, Davis's qualifications for the job greatly exceeded those of Thompson. He based these conclusions on the fact that Davis had a much broader experience in the various aspects of the department's operations than did Thompson as a result of having worked in more positions and having worked during day shifts when the bulk of the activities transpired rather than night shifts that were most often Thompson's hours of employment. He strongly recommended to Meyer that Davis be given the foreman job. Meyer testified that he was personally familiar with the relative qualifications of Davis and Thompson. If the affirmative action policy were not implicated, Meyer found Davis to be more qualified for the foreman job.

The director of personnel, Mr. Rodemeyer, testified that he did not personally weigh in on the recommendation to the council other than to voice the affirmative action implications. This is borne out by Mr. Rodemeyer's written communication to the council concerning the appointment. He recommended that Thompson be appointed for the sole reason that there was presently no member of a minority group employed as a foreman by the city. The data presented to the council by the personnel department for purposes of making the appointment did not contain any indication of the relative qualifications of the applicants to perform the foreman job. It did not even contain their respective rank-

ings on the civil service examination. From this evidence and the evidence of the council's almost exclusive reliance on departmental recommendations in past personnel matters, the record adequately supports the trial court's finding that Thompson was favored over Davis because of Thompson's race, and but for that factor, Davis would have received the promotion.

■ It is not necessary in this case to test the trial court's individual findings or ultimate findings against the step-by-step proof construct of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Both parties agree that the elements of that analysis do not completely fit the present controversy. It is abundantly clear from the trial court's written decision that it placed the burden of proof on all of the essential factual issues in the case upon the plaintiff at all stages of its analysis. Because its findings on all of these essential facts are adequately supported by substantial evidence, there was obviously a prima facie case presented by the plaintiff.[1]

## II. The Legal Significance of the City's Affirmative Action Plan With Regards to its Race–Based Employment Decision.

■ The city urges that, because its action in preferring Thompson to Davis was taken pursuant to a bona fide affirmative action plan, the use of race in the employment decision was not employed with a discriminatory motive but rather with a nondiscriminatory motive. If good faith were a controlling factor, this argument has some appeal. But the extent to which affirmative action plans may be utilized to influence employment decisions on racial grounds is strictly circumscribed by existing law.

---

1. In making this statement, we are mindful of the city's argument that in *Setser v. Novack Inv. Co.,* 657 F.2d 962, 968 (8th Cir.1981), the federal court determined that action taken pursuant to a bona fide affirmative action plan might skew the four-part *McDonnell Douglas* analysis. The legal consequences of the city's affirmative action plan on its race-based decision will be discussed later in this opinion. Although we favor placing the

burden of proof on any dispute concerning the bona fides of the plan on the city, and believe that this view was favored in *Johnson v. Transportation Agency,* 480 U.S. 616, 626, 107 S.Ct. 1442, 1449, 94 L.Ed.2d 615, 627 (1987), we need not take a clear stand on that issue. The district court placed the burden of proof on the plaintiff in analyzing this aspect of the case, and thus the city has no issue to present on this point.

The existence of a formally adopted policy by a public employer that is denominated an affirmative action plan is not a license to make race-based employment decisions favoring employees of a minority race over white employees. Such a plan may not be accepted as a nondiscriminatory rationale for employment decisions if it authorizes hiring decisions in which minority group status provides a trump card against superior qualifications on the part of a competing applicant for a job. *Johnson v. Transportation Agency,* 480 U.S. 616, 640–41, 107 S.Ct. 1442, 1456, 94 L.Ed.2d 615, 636–37 (1987). Affirmative action programs by entities operating under color of state law must (1) serve a compelling governmental interest, *Palmore v. Sidoti,* 466 U.S. 429, 432–33, 104 S.Ct. 1879, 1881–82, 80 L.Ed.2d 421, 425 (1984), and (2) be narrowly tailored to the achievement of that goal. *Adarand Constructors v. Pena,* 515 U.S. ——, ——, 115 S.Ct. 2097, 2117, 132 L.Ed.2d 158, 188 (1995); *Fullilove v. Klutznick,* 448 U.S. 448, 480, 100 S.Ct. 2758, 2776, 65 L.Ed.2d 902, 925 (1980). Remedying past societal discrimination does not qualify as an appropriate state interest. Remedial action must relate to past discrimination by the particular public employer. *Wygant v. Jackson Bd. of Educ.,* 476 U.S. 267, 106 S.Ct. 1842, 90 L.Ed.2d 260 (1986). Remedial affirmative action for past discrimination by a particular employer must only be aimed at those position areas in which members of minority groups are not proportionately represented considering their availability. *Johnson,* 480 U.S. at 622, 107 S.Ct. at 1446, 94 L.Ed.2d at 625.

Davis argued in the district court and urges in this court that the affirmative action plan of the city, either as written or as applied in this case, cannot be justified by reason of documented past racial discrimination in the promotion of employees in the street department of the City of Waterloo. In evaluating this argument, we agree that consideration of race is permissible only when that consideration is designed to remedy a "conspicuous racial imbalance in traditionally segregated job categories." *Setser,* 657 F.2d at 968. A mere imbalance between one identifiable racial group and another in an employer's labor force or in particular positions in that labor force does not alone make out a case of nondiscriminatory hiring or promotion in the selection of a member of the underrepresented group. It has not been demonstrated by the utilization data available for the street department that there was any underutilization of minority applicants, as to hiring or promotion, either before the city's affirmative action plan was adopted or thereafter. The city's affirmative action officer, Cora Turner, conceded in her testimony that this could not be shown by available statistics.

Ms. Turner's definition of underutilization of members of a protected class was as follows. She testified that in making this decision she first determines if there is a member of a minority race on the certified list to fill a position and then determines whether the job opening is within a classification that she finds to be presently underrepresented by minority workers. If she deems that it is, then the personnel department automatically recommends that the member of the minority race be promoted. The job classification that was utilized in the present case was that of foreman without regard to the type of foreman position involved. Application of this rationale ignores the differences in requirements and qualifications for each of the nine foreman positions within the public works department and parks department. It also disregards the apparent parity between the available labor market and black males employed by the city in "skilled craft" positions. As noted in *Johnson,* 480 U.S. at 626, 107 S.Ct. at 1453, 94 L.Ed.2d at 633–34, "[i]f a plan failed to take distinctions in qualifications into account in providing guidance for actual employment decisions, it would improperly dictate mere blind hiring by the numbers." In the present case, the city clearly did not assess differences in job qualifications and merely reflected on the fact that none of the nine foreman positions, which were in no way related as an employment unit, were held by a minority race member. It promoted Mr. Thompson solely because he would provide a minority presence within this category of "unrelated" foreman positions.

The district court also rejected the city's claim of justification under the affirmative action plan on the ground that the plan in no way purports to authorize what the city did in the present case. We fully agree with the court's conclusion in that regard. The city's affirmative action plan seeks to prevent potential racial discrimination through the elimination of barriers to minority race applicants. It does not allow race, as such, to weigh affirmatively in the hiring or promotion process. Indeed, the plan expressly forbids such considerations. The plan states as its objective an "attempt to redress any imbalance in representation in classification disproportionate numbers of one sex or race that may be caused by artificial barriers of attitude or custom." With respect to hiring selection, the plan expressly provides that "hiring shall be accomplished without regard to race, color, national origin, religion, sex, or handicap; except for those positions where any of the foregoing have been determined to be a bona fide occupational qualification." With respect to promotion, the plan provides that "all promotions and other personnel actions will be made without regard to race, color, creed, national origin, religion, sex, age, ancestry, disability, marital status, physical or mental handicap or lawful political affiliation." The city argues that its affirmative action plan is valid because it does not require the council to select based on race. This argument misses the point. The facts disclose that the council in this instance did select based entirely on race. The affirmative action plan does not, nor could it, justify that action.

For all of the reasons we have discussed, we conclude that the city may not rely upon its affirmative action plan as justification for having made race a controlling consideration in promoting Thompson instead of Davis. The district court properly concluded that the city's action in that employment decision discriminated against Davis in violation of Iowa Code section 216.6, 42 U.S.C. § 2000e–2(m), and 42 U.S.C. § 1983.

## III. *The City's "Unclean Hands" Contention.*

As a defense against the granting of any equitable relief to Davis, the city urges that he comes into court with unclean hands. This argument is premised on the contention that, under the civil service regulations of the city, persons filling temporary vacancies may only remain in the position for ninety days. It urges that the intent of that requirement is that the position be filled within approximately that period of time. If that had occurred in the present case, the city urges, Davis would not have obtained his GED in time to qualify for civil service consideration for the permanent position.

Davis urges, and we agree, that the civil service regulation on which the city relies only applies when vacancies have been declared. In this case, the city delayed declaring a vacancy because of the uncertainty of whether Ron Johnson, the person who held the foreman post, would be able to return to work. That decision was entirely the city's to make. The city may not sustain an "unclean hands" argument based on circumstances that it itself created. *See Garrison v. Fetters*, 383 N.W.2d 550, 553 (Iowa 1986).

Moreover, even if the ninety-day limitation (which the rule provides may be extended[2]) was applicable to Davis's appointment, this regulation only affects the length of time that any one person may serve on a temporary basis. It does not directly affect the length of time that may be taken to fill the position with a permanent appointment.

## IV. *Whether Davis's Promotion Was an Improper Grant of Equitable Relief.*

The city argues that the court ignored budget realities when it ordered Davis to be promoted to the foreman position and, at the same time, vacated its original decision, canceling Thompson's appointment as foreman. The city urges that the court may

---

2. The civil service regulation upon which the city relies specifically refers to temporary appointment for "a vacancy." It provides that "the appointing authority may temporarily appoint the employee to a position for any length of time up to 90 calendar days. Such temporary appointments are normally limited to ninety calendar days, but may be extended if circumstances require."

not require it to have an extra foreman within the street department.

In Title VII cases, if race is in any way a discernible factor in favoring one person over another in a hiring decision, the disfavored person is entitled to some measure of relief. *Bibbs v. Block,* 778 F.2d 1318, 1323–24 (8th Cir.1985). We have reached the same conclusion with respect to actions based on chapter 216. *Lynch,* 454 N.W.2d at 835–37. If it is further shown that the disfavored employee would have been the person hired or promoted if race had not been considered, the disfavored party is entitled to be placed, as nearly as practicable, in the position that he or she would have held but for the discrimination. *King v. Staley,* 849 F.2d 1143, 1145 (8th Cir.1988). Because the district court in the present case found that the city would have promoted Davis but for the improper consideration of race, the broader measure of relief is appropriate. *See King v. Trans World Airlines, Inc.,* 738 F.2d 255, 259 (8th Cir.1984).

In awarding relief in instances of sex discrimination under Title VII, a court is obligated to grant a successful plaintiff the most complete relief possible. *Franks v. Bowman Transp. Co.,* 424 U.S. 747, 764, 96 S.Ct. 1251, 1264, 47 L.Ed.2d 444, 461–62 (1976). The Court in *Franks* emphasized the concept of competitive status seniority and the need to protect an injured employee from loss of that status. Quoting from a law review article, the Court described competitive status seniority as including:

> [N]ot only promotion and layoff, but also transfer, demotion, rest days, shift assignments, prerogative in scheduling vacation, order of layoffs, possibility of lateral transfer to avoid layoff, "bumping" possibilities in the face of layoff, order of recall, training opportunities, working conditions, length of layoff endured without reducing seniority, length of layoff recall rights will withstand, overtime opportunities, parking privileges, and, in one plant, a preferred place in the punch-out line.

*Id.* at 766–67, 96 S.Ct. at 1265, 47 L.Ed.2d at 463 (quoting Aaron, *Reflections on the Legal Nature and Enforceability of Seniority Rights,* 75 Harv.L.Rev. 1532, 1535 (1962)).

In some instances, preservation of competing status seniority has been held to require bumping innocent incumbents from a position and installing the person against whom discrimination has been practiced. *See Lander v. Lujan,* 888 F.2d 153, 157 (D.C.Cir.1989). In other instances, federal courts have been loath to approve bumping of innocent incumbents. *See Romasanta v. United Air Lines, Inc.,* 717 F.2d 1140, 1151 (7th Cir.1983); *Spagnuolo v. Whirlpool Corp.,* 717 F.2d 114, 121 (4th Cir.1983); *Gamble v. Birmingham S. R.R.,* 514 F.2d 678, 684–85 (5th Cir.1975). In shaping Davis's relief in the present case, the district court ordered the city to promote Davis to the status of a street department foreman but took no action to remove Thompson from that position. The city in its argument suggests that this is requiring it to create an additional foreman job within the department.

Some courts have solved the problem of competitive-status seniority by (1) awarding the person who has been discriminated against back pay, front pay, and future pay at the rate of the position denied, plus all of the seniority rights of that position; and (2) ordering the injured party to be promoted to that position when the next available opening occurs. *See King,* 849 F.2d at 1144–45. We approved a similar grant of relief under chapter 216 of the Iowa Code in *Hy-Vee Food Stores v. Iowa Civil Rights Commission,* 453 N.W.2d 512, 532 (Iowa 1990). Unlike the present case, however, the *Hy-Vee Food Stores* case involved a pattern of discrimination affecting the promotion of several employees to a category of jobs within a large enterprise. It was not an undue burden to require the objects of discrimination to await the next available opening for promotion because such openings regularly occurred within that employer's operation. That is not the situation that Davis faces. Given the relative ages of Davis and Thompson, it is not likely that the foreman job will again be vacant during the time that Davis will be employed by the city. For this reason, we conclude that, for purposes of both the Title VII claim and the chapter 216 claim, the district court acted properly in ordering Davis's immediate appointment to

the foreman position that he had been illegally denied.

If, as the city suggests, the equitable relief ordered by the district court creates overlapping job descriptions between Davis and Thompson, that is a dilemma of the city's own making. We are confident that the city is so empowered in the direction of its employees that a workable solution to this problem may be formulated. In so doing, however, the city must avoid taking action that will diminish the benefit to Davis of the relief ordered by the district court.

### V. *Other Elements of Damage Claimed to Have Been Improperly Awarded.*

 The city urges that Davis should not have been awarded damages for emotional distress or for back pay. The back-pay argument is tied to the merits of the discrimination finding, and because we affirm the district court's decision in that regard, the entitlement to back pay is correspondingly affirmed. The city's claim with respect to emotional distress damages is based upon a claimed lack of evidentiary support. It is clear that under both Iowa Code section 216.6 and 42 U.S.C. § 1983 a plaintiff may recover damages for emotional distress for employment discrimination without a showing of physical injury, severe distress, or outrageous conduct. *Hy–Vee Food Stores,* 453 N.W.2d at 526 (section 216.6); *Dickerson v. Young,* 332 N.W.2d 93, 98–99 (Iowa 1983) (42 U.S.C. § 1983). The city urges, however, that Davis suffered no public humiliation and was not demonstrably distressed from the city's action. Davis and his wife both testified, however, that he suffered embarrassment, frustration, depression, and life changes as the result of the city's actions, which he viewed as egregious. We conclude that this evidence supports the court's award of $10,000 for emotional distress.

### VI. *The City's Appeal on the Attorney–Fee Award.*

In its appeal of the district court's attorney-fee award, the city urges that, because that award was dependent upon Davis achieving a successful result in the case, the determination should have been delayed until the conclusion of the appeal. That argument no longer has substance because, following our decision on the primary appeal, Davis will have attained a successful result.

 The city also contends that the district court erred in allowing attorney fees for services furnished by Davis's counsel before the time they commenced working on the civil rights complaint. We believe that the city's improper hiring decision subjected Davis to a need for legal counsel from the moment that decision took place and that the district court properly allowed his recovery of fees incurred from that time forward. We do agree, however, with the city's argument that legal services furnished to Davis prior to the time that the council's action on the promotion took place should not have been included in the attorney-fee award against the city. It appears that some of the legal services for which the court ordered reimbursement occurred during that time.

As a result of our conclusions, we vacate the attorney-fee award the district court made and remand that issue to the district court to determine anew a reasonable award for the fees of Davis's attorneys. In that recalculation, services rendered prior to the city council's action on the promotion shall not be included. The district court shall also determine on remand an appropriate award of attorney fees for legal services rendered to Davis in pursuing this appeal.

We have considered all issues presented and conclude that the judgment of the district court on the primary appeal should be affirmed. The judgment of the district court on the attorney-fee appeal is vacated, and that matter is remanded for further proceedings in the district court consistent with this opinion. All of the costs in No. 94–1516 and eighty-five percent of the costs in No. 95–509 are assessed to appellant. Appellee is assessed fifteen percent of the costs in No. 95–509.

(No. 94–1516) **AFFIRMED.** (No. 95–509) **VACATED AND REMANDED.**