John C. CANDILLO, Plaintiff,

v.

NORTH CAROLINA DEPARTMENT OF CORRECTIONS, Division of Adult Probation and Parole Judicial Division 3, Defendant.

No. 1:00CV1245.

United States District Court, M.D. North Carolina.

March 18, 2002.

Roman C. Pibl, Kluttz Reamer Blankenship Hayes & Randolph, L.L.P., Salisbury, NC, for Plaintiff.

Thomas Henry Moore, N.C. Department of Justice Education and Correction, Raleig, NC, for Defendant.

## MEMORANDUM OPINION

BULLOCK, District Judge.

On December 15, 2000, Plaintiff John C. Candillo ("Plaintiff") filed this action against his employer Defendant North Carolina Department of Corrections, Division of Adult Probation and Parole Judicial Division 3 ("Defendant" or the "Depart-

ment of Corrections"), alleging employment discrimination based on race, sex, national origin, age, and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA").

This matter is before the court on a motion for summary judgment by Defendant. For the following reasons, the court will grant Defendant's motion for summary judgment.

## FACTS

Plaintiff is a male born in the United States on December 12, 1942. Plaintiff's mother is a Yaqui Native American, a tribe whose members are originally from Mexico but are also located in the southwestern United States. Plaintiff's grandparents on his mother's side were Yaqui Native Americans from the Sonora province of Mexico. Plaintiff grew up in Ohio and is not fluent in Spanish. He holds both undergraduate and master's degrees.

In November 1983, Defendant hired Plaintiff to serve as a probation and parole officer. Before being hired as a probation and parole officer, Plaintiff worked in the criminal justice system of North Carolina for ten years. In 1989, Plaintiff transferred to Rowan County and was promoted to his present position of chief probation and parole officer. Plaintiff is responsible for overseeing nine probation officers and the criminal offenders whom those officers supervise.

In August 1999, Plaintiff applied for the judicial district manager position in Rowan County. This post is the head of the Rowan County Division of Community Corrections office. Six persons, including Plaintiff, applied for the position. The requirements of the judicial district manager's position included, among other things,

graduation from a four-year college, a minimum of five years' experience as a probation officer and supervisor, including at least two years' experience as field probation and parole officer or higher, and one year of experience as probation and parole unit supervisor. The judicial district manager's position carries a higher pay grade than Plaintiff's current job as well as greater supervisory duties.

Pursuant to the written merit-based hiring system used by the Department of Corrections and other State of North Carolina agencies, the personnel office of the Division of Adult Probation and Parole screened the applications for the Rowan County judicial district manager position. The merit-based system is designed to ensure that those State of North Carolina positions subject to the State's Personnel Act, North Carolina General Statute § 126–1 *et seq.*, are filled with the most qualified individuals as determined by job-related criteria, such as ability and experience. Under the system, promotions are not automatically awarded to the applicant with the most experience. Pursuant to the merit-based system, applications for a state job are screened and divided into one of three groups: non-qualified (those applicants who do not possess the requisite training and experience for the job); qualified (applicants meeting the minimum training and experience required for the job); and most qualified (applicants possessing qualifications that exceed the minimum qualifications required for the job). The merit-based system mandates that the person selected for any state job come from those applicants falling in the "most qualified" pool.

Five of the applicants, including Plaintiff, for the Rowan County judicial district manager's position were determined to be in the most qualified pool. The five applicants included two males and three fe-

males. All except one female applicant were over the age of forty. Plaintiff was the only applicant of minority descent within the most qualified pool. Three of the applicants, including Plaintiff, held chief probation and parole officer positions in Rowan County. None of the applicants had any active disciplinary proceedings against them. With the exception of Plaintiff, each of the applicants received ratings of "very good" on their annual performance appraisals for the two previous rating cycles. Plaintiff received "good" ratings on his two previous performance appraisals.[1] All five applicants in the most qualified group were interviewed for the judicial district manager position.

A three-person committee conducted the interviews. Serving on the committee were: Roselyn Powell, Judicial Division Chief for Division 3 of the Division of Community Corrections; Robert Little, then Assistant Judicial Chief for Division 3; and James Fullwood, Judicial Division Chief for Division 2. Powell (female) and Little (male) are Caucasians, and Fullwood (male) is African–American. Powell and Little were acquainted with Plaintiff before the interviews, but Fullwood was not.

The interviews were held on September 7, 1999, and each applicant was asked the same ten oral questions and also asked to provide a written response to another identical question. The questions were selected from a printed booklet of interview questions prepared by the Department of Corrections for use in job interviews. Each member of the committee scored each applicant's response for each question based on the Department of Corrections' prepared scoring guidelines. An applicant could receive one of three scores on each question: above average, average or below average. Each committee member then compiled an overall score for each applicant based on the average of his or her responses to the oral and written questions.

The interview committee rated Rose Cox, a chief probation and parole officer in Rowan County, and Catherine Combs, a chief probation and parole officer in a neighboring county, as the top candidates.[2] Both Cox and Combs received above average combined interview scores from the three committee members, while Plaintiff and the other two applicants each received a combined interview score of average. Each of the individual interview committee members gave Plaintiff a rating of average because he did not answer several questions well. In fact, although Plaintiff generally received average ratings on his responses, Plaintiff also received below average marks from each committee member on his responses to several oral questions.

The interview scores and recent annual performance reviews for the five applicants were forwarded to Robert Guy, Division of Community Corrections Director, who made the final decision on whom to promote into the Rowan County judicial district manager position. After reviewing the submitted materials and conferring with Powell, Guy decided that Cox should be promoted as she was the best qualified

---

1. Plaintiff alleges that Robert Little changed one of his ratings from "very good" to "good." Even assuming that Little changed one of the ratings, each of the other applicants interviewed received higher ratings than Plaintiff.

2. Powell characterized Cox in the following manner: "She's an excellent performer. She's very much goal-oriented and task-oriented. In terms of the interview itself, she was if not 100 percent, well into the 90 percentile of on target with policy, and being able to articulate that. She has put herself in a position where she wants to be involved and chooses to be involved. My dealings with her were always very positive." Powell Dep., p. 92.

candidate for the job. Cox is a Caucasian female, under the age of forty, and born in the United States.

Cox accepted the promotion and began work as judicial district manager for Rowan County in October 1999. Plaintiff was notified by letter dated September 17, 1999, that he was not selected for the job. Plaintiff has not applied for any promotions since being turned down for the judicial district manager position.

On October 7, 1999, Plaintiff sent a letter to the North Carolina Office of Administrative Hearings ("OAH") alleging employment discrimination as related to Defendant's failure to promote him to judicial district manager for Rowan County. On October 12, 1999, Plaintiff filed a charge of discrimination with the federal Equal Employment Opportunity Commission ("EEOC"), alleging that Defendant discriminated against him on the basis of age, gender, race, and national origin when it did not promote him to Rowan County judicial district manager. Pursuant to directions from OAH, on October 17, 1999, Plaintiff filed a contested case petition with OAH challenging Defendant's decision not to promote Plaintiff. On November 15, 1999, Plaintiff amended his petition with OAH to allege specifically age, gender, race, and national origin discrimination. On January 15, 1999, the EEOC issued Plaintiff a right-to-sue letter regarding his failure to promote claim. Prior to OAH reaching a decision, Plaintiff voluntarily dismissed his contested case petition with OAH on or about March 7, 2000.

On or about February 8, 2000, Plaintiff also filed a contested case petition with OAH, alleging that he was a victim of retaliatory discrimination by his supervisors because he had filed his earlier petition. Specifically, Plaintiff contends that Cox punished him by reprimanding him for the way he compiled the annual performance appraisal reviews for the employees he supervised. Plaintiff also argues that the Division of Community Corrections retaliated against him by withholding secretarial support for the two previous years. On April 3, 2000, Plaintiff filed a charge of discrimination with the EEOC regarding his retaliation petition, and, on April 27, 2000, Plaintiff received a right-to-sue letter from the EEOC. Prior to OAH reaching a decision, Plaintiff voluntarily dismissed his second contested case petition with OAH on May 12, 2000.

Plaintiff originally filed this action against Defendant on April 13, 2000, alleging employment discrimination based on race, sex, national origin, and age. On July 26, 2000, Plaintiff amended his complaint to include the retaliation claims. Subsequently, Plaintiff voluntarily dismissed the action in December 2000 because of failure to obtain service in a timely manner. Plaintiff refiled this action on December 15, 2000.

## DISCUSSION

Summary judgment must be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The moving party bears the burden of persuasion on the relevant issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party may survive a motion for summary judgment by producing "evidence from which a [fact finder] might return a verdict in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering the evidence, all reasonable inferences are to be drawn in favor of the non-moving party. *Id.* at 255, 106 S.Ct. 2505. However, "[t]he mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient;

there must be evidence on which the [fact finder] could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. 2505.

### A. *Title VII*

#### 1. *Procedural Requirements*

■ Title VII creates a federal cause of action for employment discrimination. Before a federal court may assume jurisdiction over a claim under Title VII, however, a claimant must exhaust state and administrative procedures enumerated in 42 U.S.C. §§ 2000e–5(b) and 2000e–5(c). *Davis v. North Carolina Dep't of Correction*, 48 F.3d 134, 137 (4th Cir.1995). Despite Defendant's argument otherwise, Plaintiff has properly exhausted his state and administrative remedies.

■ When alleged discrimination occurs in a state that has enacted a law "prohibiting the unlawful employment practice alleged" and "has establish[ed] or authoriz[ed] a State or local authority to grant or seek relief from such practice," [3] Title VII provides that: "no charge may be filed [with the EEOC] under subsection (b) of this section by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law. . . ." 42 U.S.C. § 2000e–5(c). OAH, the state agency established to hear discrimination claims, has sixty days in which to investigate the charge in order "to give state administrative agencies an

opportunity to invoke state rules of law." *Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820, 825, 110 S.Ct. 1566, 108 L.Ed.2d 834 (1990).

■ After the expiration of the sixty-day period, the complainant may file a Title VII claim with the EEOC, "[o]r, if the complainant initially filed the complaint with the EEOC, which then referred it to the state, 'the EEOC automatically [will] assume[ ] concurrent jurisdiction of the complaint' when state proceedings terminate, or upon 'expiration of the 60–day deferral period, whichever comes first.' " *Davis*, 48 F.3d at 137 (quoting *New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 64, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980)). 42 U.S.C. § 2000e–5(b) requires that the EEOC decide whether the agency will bring the claim in federal court or whether the complainant will be issued a right-to-sue letter, which is essential to initiation of a private Title VII suit in federal court. *Davis*, 48 F.3d at 138.

■ Plaintiff filed petitions with OAH for his failure to promote claim and his retaliation claim.[4] The EEOC issued right-to-sue letters for both claims more than sixty days after Plaintiff filed his petitions with OAH. Plaintiff, after receiving a right-to-sue letter regarding his failure to promote claim, filed his lawsuit in federal district court. After Plaintiff received a right-to-sue letter regarding his

---

**3.** North Carolina General Statute § 126–36 *et seq.* provides Plaintiff, a State of North Carolina employee, remedies for on-the-job discrimination. Section 126–36 allows a State employee who believes he is a victim of discrimination on the basis of age, sex, race, or national origin to pursue his case through OAH. Under Section 126–37, OAH is empowered to grant a promotion, including back pay, to any State employee who was denied a promotion due to unlawful discrimination.

**4.** It is irrelevant that Plaintiff filed his charge of discrimination regarding his failure to pro-

mote claim with the EEOC before filing a petition with OAH. *See Davis*, 48 F.3d at 137 (internal citation omitted) (stating that "if the complainant initially filed the complaint with the EEOC . . . the EEOC automatically [will] assume[ ] concurrent jurisdiction of the complaint . . . upon expiration of the 60–day deferral period."). Furthermore, it is immaterial that Plaintiff dismissed his petitions with OAH before OAH reached a decision. The sixty-day period merely gives OAH an opportunity to invoke state rules of law. *See Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820, 825, 110 S.Ct. 1566, 108 L.Ed.2d 834 (1990).

retaliation claim, Plaintiff amended his complaint to include the retaliation claim. Therefore, Plaintiff properly exhausted his state and administrative remedies.

### 2. *Age Discrimination*

■ Plaintiff alleges that Defendant discriminated against him on the basis of age when it did not promote him to the position of judicial district manager. Plaintiff's age discrimination claim, however, fails because the ADEA does not validly abrogate a state's Eleventh Amendment immunity from suit. *See Kimel v. Florida Bd. of Regents,* 528 U.S. 62, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000).

■ Defendant is a subdivision of the State of North Carolina, and, therefore, Plaintiff's federal age discrimination claim is barred by the doctrine of sovereign immunity. *See id.* at 91–92, 120 S.Ct. 631. Effective October 1, 2001, and applying to causes of action arising on or after that date, the North Carolina General Assembly enacted legislation waiving the State's sovereign immunity for claims arising under the ADEA. N.C.Gen.Stat. § 143–300.35. Because Plaintiff's alleged claim of age discrimination stems from events occurring before October 1, 2001, the State's recent waiver of sovereign immunity regarding ADEA claims is inapplicable, and the court will grant Defendant's motion for summary judgment with respect to Plaintiff's age discrimination claim.

### 3. *Race and National Origin Discrimination*

Plaintiff's mother is a Yaqui Native American and his mother's parents were Yaqui Native Americans from the Sonora province of Mexico. Plaintiff claims that Defendant discriminated against him on the basis of race and national origin when it promoted Cox, who is Caucasian and was born in the United States, instead of him to the position of judicial district manager.

Courts have found that Native Americans are protected under Title VII on the basis of national origin and race. "National origin" is not defined in Title VII, but the EEOC defines Title VII national origin discrimination to include the denial of equal employment opportunity because of an individual's, or his ancestors', place of origin. 29 C.F.R. § 1606.1. The Ninth Circuit has also held that discrimination based on Native American tribal affiliation constitutes national origin discrimination under Title VII. *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.,* 154 F.3d 1117, 1119–20 (9th Cir. 1998) (holding that each tribe was considered to be a nation at one time by other tribes and the colonizing countries, and thus "tribal affiliation easily falls within the definition of 'national origin' "). Courts have also held that Native Americans are protected from race discrimination under Title VII. *E.g., Nanty v. Barrows Co.,* 660 F.2d 1327 (9th Cir.1981), *overruled on other grounds by O'Day v. McDonnell Douglas Helicopter Co.,* 79 F.3d 756 (9th Cir.1996); *Pumpkin–Wilson v. Sheets,* 1996 WL 731235 at *3, 104 F.3d 368 (10th Cir.1996) (unpublished opinion) ("It is undisputed that [plaintiff] is a member of a protected class, Native Americans.") Thus, Plaintiff may raise a Title VII claim based on national origin and race.

■ In addition to the burden-shifting scheme established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), Plaintiff may present "ordinary principles of proof using any direct or indirect evidence relevant to and sufficiently probative of the issue." *Brinkley v. Harbour Recreation Club,* 180 F.3d 598, 607 (4th Cir.1999) (internal citation omitted). To survive a summary judg-

ment motion based upon this method of proof, Plaintiff "must produce direct evidence of a stated purpose to discriminate and/or indirect evidence of sufficient probative force to reflect a genuine issue of material fact." *Id.* "What is required is evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Fuller v. Phipps,* 67 F.3d 1137, 1142 (4th Cir.1995).

Plaintiff claims that he has presented sufficient direct and indirect evidence of race and national origin discrimination to create a genuine issue of material fact and survive summary judgment on his Title VII claim. Plaintiff relies on two pieces of evidence to support this assertion. First, Little allegedly made discriminatory remarks concerning Hispanics. Following a request by Plaintiff to hire a Spanish-speaking assistant, Little allegedly referred to Hispanics as "these people" and stated that "if they [Hispanics] come to this country, they better learn to speak the language." (Pl.'s Dep., p. 22.) Second, co-employees made derogatory remarks relating to Plaintiff's race. On one occasion, a co-employee addressed Plaintiff as a "spic." (Pl.'s Dep., p. 101.) Co-employees often joked and made comments about Plaintiff being a Native American. For example, a firearms instructor stated to Plaintiff, "Hey, Tonto, come over here and get your ammo." (Pl.'s Dep., p. 102.) Co-employees also referred to Plaintiff as "Chief." (Pl.'s Dep., p. 102.) Plaintiff is a chief probation officer, and it is not clear in what context co-employees addressed him as "Chief."

■ None of these alleged remarks, considered alone or collectively, are sufficient to raise a genuine issue of material fact. "[T]o prove discriminatory animus, the derogatory remark cannot be stray or isolated[,] and unless the remarks upon which plaintiff relies were related to the

employment decision in question, they cannot be evidence of discrimination." *Brinkley,* 180 F.3d at 608 (internal citation omitted). Further, stray remarks by decision makers that do not pertain to the plaintiff should be given little weight. *See Price Waterhouse v. Hopkins,* 490 U.S. 228, 277, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (O'Connor, J., concurring in judgment) ("[S]tray remarks in the work place ... unrelated to the decisional process itself [cannot] suffice to satisfy plaintiff's burden....."). In the present case, although Little played a role in the decision-making process of whether to promote Plaintiff, Little's remark was an isolated event. There is also no nexus between the remark and Plaintiff's failed promotion. Little's comment was made in response to Plaintiff's request for secretarial support, not the decision whether to promote Plaintiff. The record does not support the conclusion that Little's remark affected the decision not to promote Plaintiff. In addition, isolated remarks by co-employees, who played no part in the decision not to promote Plaintiff, cannot be related to the employment decision in question.

■ When a plaintiff presents an employment discrimination claim with insufficient direct evidence to raise a genuine issue of material fact, the plaintiff may proceed under the burden-shirting scheme of *McDonnell Douglas. Brinkley,* 180 F.3d at 607. Pursuant to the *McDonnell Douglas* analysis, the plaintiff has the initial burden of establishing a *prima facie* case. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. If the plaintiff meets this initial burden, a presumption of discrimination arises, and the burden shifts to the defendant to produce, but not prove, a "legitimate, nondiscriminatory reason" for its decision. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If the

defendant meets its burden, the presumption of discrimination that arose from the *prima facie* case disappears, and the burden of proof is left with the plaintiff to show that the employer acted with a discriminatory intent and that its proffered explanation was a pretext for discrimination. *Id.* at 252–53, 101 S.Ct. 1089. "[E]vidence of pretext, combined with the plaintiff's prima facie case, does not *compel* judgment for the plaintiff, because it is not enough to disbelieve the employer; the factfinder must also believe the plaintiff's explanation of intentional discrimination." *Equal Employment Opportunity Comm'n v. Sears Roebuck & Co.*, 243 F.3d 846, 852 (4th Cir.2001) (citing *Reeves v. Sanderson Plumbing Prod's, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)).

■ To prove a *prima facie* case of discriminatory failure to promote under Title VII, Plaintiff must establish that: (1) he is a member of a protected class; (2) his employer had an open position for which he applied or sought to apply; (3) he was qualified for the position; and (4) he was rejected for the position under circumstances giving rise to an inference of unlawful discrimination. *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 959–60 (4th Cir.1996) (citing *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089). "The burden of establishing a prima facie case of disparate treatment is not onerous." *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089.

Plaintiff established a *prima facie* case of discriminatory failure to promote based on national origin and race. Plaintiff is a Yaqui Native American, and his grandparents are from Mexico. Plaintiff produced evidence that he applied for, and was qualified for, the Rowan County judicial district manager position. Finally, the fact that the person selected (Cox) was not of foreign origin and is Caucasian gives rise to an inference of unlawful discrimination. *See Carter v. Ball*, 33 F.3d 450, 458 (4th Cir.1994) (citing *Patterson v. McLean Credit Union*, 491 U.S. 164, 186–87, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) (superseded by statute on other grounds)).

■ Defendant, however, established a legitimate, nondiscriminatory reason for not promoting Plaintiff by producing evidence that Cox was better qualified for the judicial district manager position. *See Amirmokri v. Baltimore Gas & Elec. Co.*, 60 F.3d 1126, 1129 (4th Cir.1995) ("An employer may rebut a plaintiff's prima facie case by demonstrating that the person promoted was better qualified for the position."). While Plaintiff performed poorly during the interview, the three-person interview committee rated Cox as one of the top candidates. *See Vitug v. Multistate Tax Comm'n*, 88 F.3d 506, 515 (7th Cir. 1996) (concluding that evidence that a Filipino employee was not offered a promotion because three separate interviewers unanimously considered him the least qualified of applicants interviewing for a job constituted a legitimate, nondiscriminatory reason not to give the employee the position). Plaintiff also had the lowest performance appraisal ratings of any of the applicants. Even if Plaintiff's education and experience are objectively superior to Cox's objective qualifications, Defendant may legitimately take into account both the objective factor of Cox's superior appraisal ratings and more subjective factors such as Cox's interpersonal and leadership skills. *See Amirmokri*, 60 F.3d at 1130 ("Even if [plaintiff's] education and outside experience were objectively superior to Lenker's [the person promoted], [the employer] could properly take into account both the objective factor of Lenker's outstanding performance [with his previous employer] and the more subjective factors like his good interpersonal skills and his ability to lead a team."). The ultimate burden thus falls on Plaintiff to prove that

Defendant's explanation is merely pretextual and that Plaintiff was instead rejected for promotion because of his national origin or race.

▇ Plaintiff failed to rebut Defendant's legitimate, nondiscriminatory reason for not promoting him. Plaintiff argues that Defendant acted with discriminatory intent and that the Defendant's explanation is a pretext for discrimination based on the following: (1) Plaintiff asserts that he is more qualified than Cox; (2) Defendant provided information to the interviewers prior to the interview, which included each applicant's age, race, gender, national origin, and veteran status; (3) Wayne Kinney, Plaintiff's former supervisor, allegedly stated to Plaintiff that he believed that Plaintiff was discriminated against; and (4) Cox was promoted because she was very close friends with two of three interviewers and because she was a member of the North Carolina Probation/Parole Association ("NCPPA").

▇ None of Plaintiff's claims, individually or collectively, is sufficient to rebut Defendant's legitimate, nondiscriminatory reason for not promoting Plaintiff. First, an employee's own opinion of his qualifications, without evidence to support it, fails to disprove an employer's explanation or show discrimination. *Evans*, 80 F.3d at 960. Second, Plaintiff failed to show that Defendant used the information provided to the interviewers improperly. Third, a lay person's opinion that Defendant discriminated against Plaintiff is insufficient to overcome Defendant's explanation or to show discrimination. Finally, although it may be an unfair decision, a promotion decision based on friendship or politics is not actionable under Title VII. *Autry v. North Carolina Dep't of Human Resources*, 820 F.2d 1384, 1386 (4th Cir. 1987) (observing that a case of racial discrimination is not proven by showing that friendship or politics entered into the pro-

motion decision). Thus, Plaintiff has failed to establish a Title VII claim based on national origin and race discrimination.

### 4. *Gender Discrimination*

Plaintiff is a male and claims that Defendant discriminated against him on the basis of gender when it promoted Cox, a female, instead of him to the position of judicial district manager.

Plaintiff claims that he has presented sufficient direct and indirect evidence of gender discrimination to create a genuine issue of material fact without having to rely on the burden-shifting scheme of *McDonnell Douglas*. Plaintiff essentially relies on one piece of evidence to support this assertion. Powell, a primary decision maker in Plaintiff's failed promotion, stated the following:

Q: When you [Powell] made your determination about recommending Ms. Cox and Ms. Combs, did the fact that they were women play at all into your decision?

A: No.

Q: Did you believe that more women should be in those positions [judicial district manager] than there were?

A: Yes.

(Powell Dep., p. 52.)

▇ Although Powell, a decision maker in Plaintiff's failed promotion, made the comment, Plaintiff failed to provide any evidence that the opinion was related to the employment decision in question. *See, e.g., Brinkley*, 180 F.3d at 608 (holding that to prove discriminatory animus a derogatory remark cannot be isolated and must be related to the employment decision). Although Powell stated that she believed more women should be judicial district managers, she also stated that Cox being a woman played no part in her decision to promote Cox and not Plaintiff.

Furthermore, the opinion was isolated temporally and occurred· only once. The decision to promote Cox and not Plaintiff was made in September 1999, while Powell's opinion that more women generally should be judicial district managers was made in a deposition on October 25, 2001.

Powell was but one of three interviewers who merely recommended Cox for the promotion, and she was not the final decision maker. Furthermore, each of the other two interviewers (Little and Fullwood) rated Cox and Combs, also a female, as the top-rated candidates. Although cooperative decision making does not insulate an employer from liability, the facts that Powell did not make the decision alone and was not the final decision maker are important. *Cf.* 42 U.S.C. § 2000e–2(m) (liability "is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a *motivating* factor for any employment practice") (emphasis added); *Kubicko v. Ogden Logistics Services*, 181 F.3d 544, 552 (4th Cir.1999) (stating that plaintiff must show that a "factor made illegal under Title VII played a *motivating part* in an employment decision") (emphasis added). Finally, although courts have held that entirely subjective interviews with no guidelines to limit an interviewer's discretion are susceptible to manipulation for a discriminatory intent, such subjectiveness was not present in the interviews for the judicial district manager position. The interviews were conducted pursuant to a written policy that provided specific guidelines on how each applicant should be evaluated. Although the interviewers considered subjective criteria, each applicant was asked the same ten oral questions and one written question that related to skills and knowledge required for the judicial district manager position. Each of the interviewers decided that Cox was the most qualified for the position. Thus, Plaintiff has failed to present suffi-

cient direct and indirect evidence to raise a genuine issue of material fact.

■ Plaintiff also fails to rebut Defendant's legitimate, nondiscriminatory reason for not promoting Plaintiff under *McDonnell Douglas*. Plaintiff presented almost no circumstantial evidence showing that Defendant discriminated against Plaintiff, and when combined with Powell's opinion concerning women and the judicial district manager position, the evidence is still insufficient to rebut Defendant's explanation. Thus, Plaintiff's gender discrimination claim fails.

5. *Retaliation*

In Plaintiff's brief in response to Defendant's motion for summary judgment, Plaintiff did not address Defendant's motion for summary judgment concerning his retaliation claim and moved to dismiss it. Therefore, the court need not consider this claim further.

B. *Section 1981*

Plaintiff avers that Defendant violated 42 U.S.C. § 1981 in its failure to promote him to the judicial district manager position and by retaliating against him for filing a contested case petition with OAH and discrimination charges with the EEOC. As stated above, Plaintiff has moved to dismiss his retaliation claims against Defendant.

■ Title VII is not an exclusive remedy for employment discrimination. *See Keller v. Prince George's County*, 827 F.2d 952, 958 (4th Cir.1987). 42 U.S.C. § 1981 prohibits racial discrimination in the making and enforcement of private contracts. *Runyon v. McCrary*, 427 U.S. 160, 168, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976). Claims for age and gender discrimination, however, are not actionable under Section 1981. *Anooya v. Hilton Hotels Corp.*, 733 F.2d

48, 50 (7th Cir.1984) (stating that Section 1981 does not apply to age, religious, or gender discrimination). Therefore, only Plaintiff's claims of discrimination based on race and national origin are actionable under Section 1981.

▆▆ The court's analysis with respect to Title VII also governs Plaintiff's claims under Section 1981. Thus, because Plaintiff failed to establish that Defendant violated his rights under Title VII, his similar claims brought under Section 1981 must also fail. *See Causey v. Balog,* 162 F.3d 795, 804 (4th Cir.1998) (stating that elements of a *prima facie* case are the same under Title VII and Section 1981).

### CONCLUSION

For the reasons set forth in this opinion, the court will grant Defendant's motion for summary judgment.

An order and judgment in accordance with this memorandum opinion shall be entered contemporaneously herewith.

### ORDER and JUDGMENT

For the reasons set forth in the memorandum opinion filed contemporaneously herewith,

IT IS ORDERED AND ADJUDGED that Defendant's motion [Doc. # 14] for summary judgment on Plaintiff's claims based on race, sex, national origin, and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.,* and 42 U.S.C. § 1981, and on Plaintiff's claim based on age, in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.,* is **GRANTED,** and this action is **DISMISSED** with prejudice.